*Decisions will be entered under Rule 50.*

The F. & R. Lazarus & Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 109266. Promulgated December 18, 1942.

*Robert P. Goldman, Esq.*, and *Harry Stickney, Esq.*, for the petitioner.

*O. W. Swecker, Esq.*, for the respondent.

OPINION.

Van Fossan, *Judge:* The first issue presented is whether petitioner is entitled to a dividends paid credit under section 27 (f) of the Reve-

nue Act of 1936,[1] for its fiscal year ending January 31, 1937, by reason of the retirement of preferred stock. Petitioner contends that it is entitled to such a credit because the retired stock had, in previous years, been issued as stock dividends and represented earnings and profits accumulated after February 28, 1913. It argues that the retirement of this stock resulted in a distribution of those accumulated earnings and profits. Respondent, on the other hand, takes the position that the stock dividends had the effect of turning the earnings and profits into capital. Therefore, he insists, the retirement of this stock was a return of capital for which no dividends paid credit can be allowed.

Section 27 (f) sets up two requirements before a dividends paid credit may be allowed. First, there must be a distribution in liquidation, and, second, the distribution must be properly chargeable to earnings and profits accumulated after February 28, 1913. Respondent does not contest that there has been a distribution in liquidation in this proceeding within the meaning of section 27 (f). Section 115 (i) of the Revenue Act of 1936 defines a partial liquidation to include "a distribution by a corporation in complete cancellation or redemption of a part of its stock." Here the distribution by petitioner during the year ending January 31, 1937, resulted in the complete cancellation or redemption of its preferred stock which had been issued as stock dividends. Such a distribution constitutes a distribution in liquidation. *Hill* v. *Commissioner*, 126 Fed. (2d) 570. The first requirement of section 27 (f), that the distribution must be in liquidation, has been met.

The next question is whether the distribution was properly chargeable to earnings and profits accumulated after February 28, 1913. The record shows that the earnings and profits were accumulated after February 28, 1913, and thus there is left only the problem whether the distribution was properly chargeable to earnings and profits. Petitioner in 1924 and 1929 capitalized its earnings and profits by issuing preferred stock dividends. Those dividends were nontaxable under the statutes effective when the dividends were issued.[2] *Helvering* v. *Gowran*, 302 U. S. 238. On its books petitioner reduced its earned surplus account and increased its capital account by the amount of the par value of stock issued as dividends. From 1929 to 1936 petitioner retired all of this stock except 12,000 shares. On May 1, 1936, petitioner retired 6,000 of these shares, using the proceeds of a loan effected on that date in part payment therefor. On August 24, 1936, petitioner issued 30,000 shares of 4¾ percent preferred stock with a par

---

[1] SEC. 27. CORPORATION CREDIT FOR DIVIDENDS PAID.

\* \* \* \* \* \* \*

(f) DISTRIBUTIONS IN LIQUIDATION.—In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purposes of computing the dividends paid credit under this section, be treated as a taxable dividend paid.

[2] Section 201 (f) of the Revenue Act of 1924 and sec. 115 (f) of the Revenue Act of 1928 both provided: "\* \* \* a stock dividend shall not be subject to tax."

value of $100 for $3,000,000 in cash, to a corporation which owned practically all of its common stock. It used the proceeds of this issue to retire the remaining 6,000 shares of stock which had been issued as a stock dividend.

As we see it, the crux of the problem is whether a capitalization of earnings prevents those earnings from being distributed as taxable dividends. Respondent's argument centers around the theory that earnings once capitalized are like money paid in as capital, which is never available for dividends. We disagree with this view in the light of section 115 (h) of the Revenue Act of 1936.[3] Referring to this section, the Senate Committee on Finance, in its report on the Revenue Act of 1936, made this statement:

The rule, under existing law, with respect to the effect on corporate earnings or profits of a distribution which, under the applicable tax law, is a nontaxable stock dividend or a distribution of stock or securities in connection with a reorganization or other exchange, on which gain is not recognized in full, is that such earnings or profits are not diminished by such distribution. In such cases, earnings or profits remain intact and hence available for distribution as dividends by the corporation making such distribution, or by another corporation to which the earnings or profits are transferred upon such reorganization or other exchange. This rule is stated only in part in section 115 (h) of the Revenue Act of 1934, and corresponding provisions of prior acts, but is the rule which is applied by the Treasury and supported by the courts in *Commissioner* v. *Sansome*, 60 Fed. (2d) 931; *U. S.* v. *Kauffman*, 62 Fed. (2d) 1045; *Murcheson* v. *Comm.*, 76 Fed. (2d) 641. While making no change in the rule as applied under existing law, the recommended amendment is desirable in the interest of greater clarity.

As the above quotation indicates, the earnings and profits in the case at bar remained intact after the stock dividends were issued and hence were available for the payment of dividends.

We regard as immaterial the fact that petitioner issued other preferred stock in 1936 to obtain the funds necessary to retire the preferred stock which had been issued as a dividend. *James Irvine*, 46 B. T. A. 246.

Although the earnings and profits remained intact after the issuance of a stock dividend, it does not follow as petitioner contends, that the retirement of the stock was entirely chargeable against surplus. In this respect we reaffirm our holding in *August Horrmann*, 34 B. T. A.

---

[3] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

(h) EFFECT ON EARNINGS AND PROFITS OF DISTRIBUTIONS OF STOCK.—The distribution (whether before January 1, 1936, or on or after such date) to a distributee by or on behalf of a corporation of its stock or securities or stock or securities in another corporation shall not be considered a distribution of earnings or profits of any corporation—

(1) if no gain to such distributee from the receipt of such stock or securities was recognized by law, or

(2) if the distribution was not subject to tax in the hands of such distributee because it did not constitute income to him within the meaning of the Sixteenth Amendment to the Constitution or because exempt to him under secion 115 (f) of the Revenue Act of 1934 or a corresponding provision of a prior Revenue Act.

As used in this subsection the term "stock or securities" includes rights to acquire stock or securities.

1178, which concerned the taxability to stockholders of a cash distribution by a corporation in 1930. In dealing with the effect which a distribution in 1927 by the corporation in redemption of preferred stock previously issued as a dividend had upon the remaining earnings and profits of the corporation available for subsequent distribution, the Board stated:

* * * We are unwilling to disregard the interest which shares of stock represent in the assets of the corporation and to say that they serve only to earmark a portion of surplus. Also, we are unwilling to attempt to earmark shares of stock and say that the redemption of the original shares is entirely chargeable against capital account (to the extent of the amount originally paid in) while the redemption of dividend shares is chargeable in no part against capital. We think that a proportional part of the paid-in capital must be considered as standing behind each of the shares outstanding at any particular time, so that on redemption of any of them a certain part of the redemption is properly chargeable against capital account. Since the capital structure as distinguished from the statutory "capital account" was increased to $1,000,000 by the issuance of new stock of the par value of $600,000 in 1922, while the paid-in capital (the statutory capital account) remained at $400,000, we think that the 1927 redemption should be chargeable against capital account in the ratio of $400,000 to $1,000,000.

In the case at bar the history of petitioner's capital account shows that prior to 1924 $1,400,000 in property was actually paid into the capital account by stockholders. In addition petitioner in 1908 capitalized $100,000 of its surplus by a declaration of a stock dividend. We must treat the latter amount as though it were paid-in capital, as pre-1913 earnings are not subject to income tax. *Foster* v. *United States*, 303 U. S. 118. Thus we shall consider the paid-in capital prior to 1924 as being $1,500,000. In 1922 petitioner capitalized $1,000,000 of its earned surplus by a stock dividend, thereby increasing its capital structure to $2,500,000. On January 31, 1924, petitioner canceled preferred stock in the amount of $500,000. Since $1,500,000 of the total capital structure was paid-in capital, three-fifths of the $500,000, or $300,000, paid to cancel the preferred stock represented paid-in capital. Thus the paid-in capital was reduced by that transaction to $1,200,000. On June 30, 1924, petitioner issued a preferred stock dividend of 10,000 shares and had outstanding 20,000 shares of common stock. The paid-in capital standing behind each share, then, was $40, computed by dividing $1,200,000, the paid-in capital, by 30,000, the total number of shares outstanding. In 1927 petitioner canceled 7,000 shares of common stock, thus reducing the paid-in capital by $280,000, leaving a remainder of $920,000. The paid-in capital remained at the latter figure when the preferred stock dividend of 25,000 shares was issued in 1929. The 1929 stock dividend increased the number of shares outstanding to 48,000. We regard as immaterial for our purposes the exchange in 1929 of the outstanding 13,000 shares of $100 par value common stock for 350,000 shares of new no par value common stock, because the paid-in capital standing behind the 350,000 shares

when issued remained the same as that which had stood behind the old 13,000 shares. Therefore, we base our computations on 13,000 shares of common stock and 35,000 shares of preferred stock outstanding. The paid-in capital standing behind each share of stock after the 1929 preferred stock dividend was $19.16+ computed by dividing $920,000, the total paid-in capital, by $48,000, the total number of shares outstanding.

From January 31, 1929, to January 31, 1936, petitioner retired 23,000 of the 35,000 shares of its outstanding preferred stock, thereby reducing the paid-in capital by $440,818.20, leaving a remainder of $479,166.80. Immediately thereafter the paid-in capital standing behind each share of the remaining 25,000 shares of outstanding stock was $19.16+, computed by dividing $479,166.80, the total remaining paid-in capital, by 25,000, the total number of shares outstanding. On May 1, 1936, petitioner retired 6,000 shares of preferred stock. Since $19.16+ per share paid to retire this stock represented paid-in capital, petitioner is entitled to a dividends paid credit for the taxable year ending January 31, 1937, for all amounts in excess of that sum. The retirement of those 6,000 shares reduced the total paid-in capital to $364,166.84, and the total number of shares outstanding to 19,000.

On August 24, 1936, petitioner issued 30,000 shares of additional preferred stock having a par value of $100 per share for $3,000,000 in cash. This increased the total number of shares outstanding to 49,000 and the total paid-in capital to $3,364,166.84. Thus the paid-in capital standing behind each share of the 6,000 shares of preferred stock retired between August 24 and October 24, 1936, was $68.65+, computed by dividing $3,364,166.84, the total paid-in capital, by 49,000, the total number of shares outstanding at that time. Petitioner, therefore, is also entitled to a dividends paid credit for the taxable year ending January 31, 1937, for all amounts paid to retire the latter 6,000 shares in excess of $68.65+ per share.

The premium of $10 a share which petitioner paid over and above the par value of the retired stock should be included in the dividends paid credit. *J. Weingarten, Inc.*, 44 B. T. A. 798.

The second issue presented to this Court is whether petitioner is entitled to a dividends carry-over credit for the year ending January 31, 1938, under section 27 (b) (2) of the Revenue Act of 1936.[4] Re-

---

[4] SEC. 27. CORPORATION CREDIT FOR DIVIDENDS PAID.

\* \* \* \* \* \* \*

(b) DIVIDEND CARRY-OVER.—In computing the dividends paid credit for any taxable year, if the dividends paid during the taxable year are less than the adjusted net income, there shall be allowed as part of the dividends paid credit, and in the following order :

\* \* \* \* \* \* \*

(2) Dividends paid during the first preceding taxable year in excess of the adjusted net income for such year.

No credit shall be allowed for dividends paid by a corporation prior to its first taxable year under this title.

spondent does not contest this issue. It seems clear that petitioner is entitled to this credit, since apparently the dividends paid during the year ending January 31, 1938, were less than the adjusted net income for that year, and the dividends paid in the year ending January 31, 1937, were greater than the adjusted net income for that year. Thus the requirements of section 27 (b) (2) are met. This carry-over credit should be limited to the amount by which the cash dividends plus the dividends paid in retiring stock, computed as directed under the first issue, exceed the adjusted net income for the year ending January 31, 1937.

*Decision will be entered under Rule 50.*