[S. F. No. 8700. In Bank.—April 28, 1919.]

## E. J. HANSON et al., Appellants, v. HERBERT CHOYNSKI, Respondent.

[1] CORPORATIONS — DISSOLUTION FOR NONPAYMENT OF LICENSE TAX — DIRECTORS TRUSTEES FOR CREDITORS — CONSTRUCTION OF CODE AMENDMENT OF 1905.—The legislature contemplated that section 400 of the Civil Code, as amended in 1905 (Stats. 1905, p. 563), providing that unless other persons are appointed by the court, the directors or managers of the affairs of a corporation at the time of its dissolution are trustees of the creditors and stockholders or members of the corporation dissolved, and have full power to settle

the affairs of the corporation, would apply to corporations dissolved for nonpayment of license tax, as well as to corporations dissolved under the provisions of the codes.

[2] ID.—APPLICATION OF TRUST FUNDS TO PAYMENT OF CLAIMS— DUTIES OF CREDITORS—LEGAL REMEDIES.—Where a corporation has been dissolved for nonpayment of its license tax 'and the affairs of the corporation are under the control of the directors as trustees, the creditors must ordinarily seek the usual remedies at law before applying to a court of equity to compel the application of the funds in the hands of the trustees to the payment of their claims.

[3] ID.—MISAPPLICATION OF TRUST FUNDS—ACTION TO COMPEL APPROPRIATION IN PAYMENT OF CREDITORS' CLAIMS—EQUITY.—Creditors of a corporation dissolved for nonpayment of its license tax are justified in seeking the interposition of a court of equity to compel the application of trust funds to the payment of their claims, where it is made to appear that one of the directors was seeking to appropriate the major part of the assets to his own claim, and relief had been unsuccessfully sought in the only legal tribunal that could defeat such a preference.

[4] ID.—DIRECTOR AS CREDITOR—PAYMENT OF OWN CLAIM VOID.—A director of a corporation who is at the same time a creditor is precluded from using his position as director to obtain a preference over other creditors in the payment of his own claim.

[5] ID.—MISAPPLICATION OF TRUST FUNDS BY ONE TRUSTEE—ACTION TO COMPEL APPLICATION TO PAYMENT OF CREDITORS' CLAIMS— PLEADING—PARTIES—OTHER TRUSTEES NECESSARY DEFENDANTS.— Where one of three trustees of a corporation dissolved for nonpayment of license tax has applied trust moneys in his hands in payment of his own claim, the other two trustees are necessary parties defendant in an action by creditors of the corporation to compel the application of the money to the payment of their claims.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.    J. M. Seawell, Judge. Reversed.

The facts are stated in the opinion of the court.

Vogelsang & Brown and Wm. M. Cannon for Appellants.

Herbert Choynski, *in pro. per.*, and James Raleigh Kelly for Respondent.

WILBUR, J.—Plaintiffs are creditors of the Olson's Market Incorporated.  In September, 1907, it appeared that the

corporation was insolvent, and negotiations were in progress between the defendant and one I. I. Brown, representing the creditors, wherein it was sought to settle the claims of the creditors at thirty cents on the dollar. In order to consummate these negotiations it was necessary to sell the property of the corporation, and, in addition thereto, for the stockholders to raise a certain amount, which, together with the amount for which the property was sold, would aggregate a sufficient amount to pay thirty cents on the dollar. While these negotiations were pending, on November 30, 1907, the charter of the Olson's Market Incorporated was forfeited for nonpayment of its license tax. Subsequent thereto two sales of the property of the corporation were effected which had been in contemplation as a part of the proposed settlement. Stock and fixtures were sold for $1,598, and a check therefor was drawn in favor of the corporation. This check was indorsed "Herbert Choynski, Trustee," and collected by the defendant, who was a director at the time of the dissolution of the corporation. Mr. Olson, one of the other directors, sold stock of goods for the sum of $467 and retained the possession thereof. There was at the time of the dissolution one other director, there being three in all, named H. B. Hawkinson. The total amount of indebtedness due for merchandise is alleged by the defendant to be about ten thousand dollars. The defendant claimed that the corporation was largely indebted to him, and in his answer states that the amount of that indebtedness was nineteen thousand dollars. It was believed by the creditors that the proceeds of these sales of the property of the corporation were being held to pay their claims, and that the delay was caused by the failure of the stockholders to raise the additional money required to completely liquidate the affairs of the corporation. Defendant subsequently refused to pay over the money in his hands, or any part of it, for division among the creditors of the corporation. Bankruptcy proceedings were thereupon begun against the corporation, upon the theory that there had been an illegal preference in favor of the defendant as a creditor of the corporation. The defendant, acting as attorney for the Olson's Market Incorporated, filed an answer to the petition in bankruptcy, verified by him as an attorney, containing the following denial: "Denies that the said respondent did convey or transfer, or did permit to be conveyed or transferred to

Herbert Choynski or any other person, the sum of $1,598, or any other sum, the property of said respondent, with intent to hinder, delay, or defraud the creditors, or either of them, of said respondent." It was also alleged in said answer that the corporation had been dissolved November 30, 1907. It denied specifically any transfer of its property, "to wit, the sum of $1,598 or any other sum to one of its creditors, Herbert Choynski, or to any other person, with intent to prefer said Herbert Choynski, or any other person, as a creditor over its other creditors, or either of them." Upon the trial before the referee, according to the testimony of Brown and the referee, the defendant Herbert Choynski testified that he had received the check for $1,598 in trust for the creditors, and that he did not receive it and was not holding it adversely to the creditors. In his answer in this case the defendant alleges that the corporation was indebted to him in the sum of nineteen thousand dollars; that it was agreed between himself and Henry Olson, one of the other trustees, that this sum of $1,598 should be applied upon the defendant's claim, but subsequently "one thousand dollars of said sum was returned to the said Henry Olson for the reason that it was believed that the same would be considered a preference." On the trial the defendant testified with relation to the matter as follows: "We had this bankruptcy proceedings under way, and I told him, I said, 'Olson, our bankruptcy court cannot adjudicate this corporation a bankrupt, because this corporation was dead, and they have no right to take any action with respect to a dead corporation any more than they have with respect to a dead person. They will never be able to adjudicate this a bankrupt, and the court will not make that adjudication.' Now I have been the only friend this corporation has had. I explained to him that I was entitled to five hundred dollars of the money anyhow, even if there was an adjudication of bankruptcy. I would be entitled to have paid the costs that were paid by me and my five hundred dollars attorney's fees, and no bankruptcy court would be permitted to adjudicate that question, and this other one thousand dollars I ought to be able to get that and use and apply on there, because if the whole thing did go into bankruptcy they wouldn't get one cent on the dollar, and it wouldn't be distributed among enough people to make it worth anybody's while. He said, 'All right; I would rather

have you have it than anybody else.' I said, 'All right; then if anything comes up after this you will understand that you have given me permission to take it,' and he said, 'Yes.' This is all that took place at that time. That took place between me and Mr. Olson at the very time the Olson's market was charged with giving me a preference of $1,598.

"Q. You carried out the preference, then, while that proceeding was going on? A. Yes, I did. I tried in every way to get it, I will tell you that candidly.

"Q. You waited until you testified in the bankruptcy proceeding that there was no preference and then you went and had a preference after testifying and before the proceeding was decided? A. I guess that is it."

The court in this action found: "That in August, 1909, the defendant agreed with his cotrustee, Henry Olson, that the defendant should apply the sum of $1,598 as part payment on account of defendant's own claim against Olson's Market Incorporated, exceeding said sum by a considerable amount, and the defendant did then so apply said sum; and thereupon he paid over to said Olson one thousand dollars thereof." The court further found that the bankruptcy proceedings were begun April 14, 1908, upon the ground of a preference of defendant as a creditor in the sum of $1,598, and upon the ground of a transfer to the defendant of the sum of $1,598, with intent to prefer him as a creditor, and upon no other ground, and that, after a full hearing of the petition, in the month of August, 1910, "said court adjudicated that none of the alleged acts aforesaid had been committed," and thereupon dismissed the said bankruptcy proceedings. Thereafter plaintiffs brought this proceeding on behalf of themselves and other creditors, praying, among other things, "That the sum of $1,598, with interest, be paid by the defendant to the clerk of the court for the benefit of plaintiffs and such other creditors of the Olson's Market Incorporated as are entitled to participate therein, and that the funds be ordered distributed proportionately according to the respective amounts of their valid claims among the creditors of said Olson's Market Incorporated entitled legally to participate therein, and for general relief." The defendant in his answer and upon the witness-stand denied that he was a director or trustee of the defunct corporation, but the finding of the court was to the contrary.

The rights of the parties depend in large measure upon the statute concerning the effect of a dissolution of a corporation in force at the time of such dissolution. Judgment was for the defendant, and plaintiffs appeal. Appellants predicate their right to recover in this form of action on the theory that immediately upon the dissolution of the corporation the directors became trustees for the stockholders and creditors of the corporation, under section 400 of the Civil Code. They, therefore, claim the aid of a court of equity in the administration and distribution of the trust. The statute providing for a forfeiture of a corporate charter for failure to pay the license tax declares (Stats. 1907, p. 746, sec. 10a) : (Italics ours.) "In all cases of forfeiture under the provisions of this act, the directors or managers in office of the affairs of any domestic corporation, whose charter may be so forfeited, . . . are deemed to be *trustees of the corporation and stockholders or members of the corporation* whose power or right to do business is forfeited, and have full power to *settle the affairs of the corporation,* and to maintain or defend any action or proceeding then pending in behalf of or against any of said corporations, or to take such legal proceedings as may be necessary to fully settle the affairs of the corporation, and such directors or managers, as such trustees, may be sued in any of the counties of the state by any person having a claim against any of said corporations." This statute does not in express terms make the directors trustees for the creditors. However, section 400 of the Civil Code, as it stood at the time of the dissolution of the corporation, provided: "Unless other persons are appointed by the court, the directors or managers of the affairs of a corporation at the time of its dissolution are trustees of the creditors and stockholders or members of the corporation dissolved, and have full power to settle the affairs of the corporation." It is claimed that these two statutes must be construed together, and when so construed the directors are trustees for the creditors as well as the stockholders. The power to manage the property of the defunct corporation, and to settle its affairs, necessarily involves the payment of the creditors' claims, where there is sufficient property, and the creditors are, therefore, necessarily interested in the conduct of the trustees. The question of the method of enforcing their claims, however, is more difficult, and depends upon the legislation on the subject. In order to

correctly understand the rights of a corporation, its stock-
holders and creditors, in case of dissolution for nonpayment
of license tax, it is necessary to consider the history of this
legislation.    The original statute imposing a license tax was
approved March 20, 1905.    (Stats. 1905, p. 493.)    It pro-
vided for the forfeiture of the charters of all corporations
failing to pay the license tax (section 6), and declared that
any person who shall exercise "any powers under the charter
of any such corporation after the same shall become forfeited
to the state, shall be guilty of a misdemeanor."   No provision
was made therein for settling the affairs of such a dissolved
corporation, or disposing of its property.    To provide for this
defect, the legislature the next day (March 21, 1905) repealed
section 399 and amended section 400 of the Civil Code to read
as above quoted.    (Stats. 1905, p. 563.)    This amendment
merely substituted "a" for "such" before the word "cor-
poration."    The reason for the change was that section 399
of the Civil Code stated that the dissolution of corporations,
if voluntary, was provided for by the chapter on dissolution
of corporations (Code Civ. Proc., tit. VI, pt. III), and in-
voluntary by the chapter on *quo warranto* (c. 5, tit. X, pt. II,
Code Civ. Proc.) ; consequently the words "such corpora-
tion" in section 400 of the Civil Code might be construed to
apply only to corporations dissolved by one of these two
methods.    [1]    It is obvious, therefore, that the legislature
contemplated that section 400 of the Civil Code would apply
to corporations dissolved for nonpayment of license tax, and
that it was amended as a part of the general scheme of dealing
with corporations so dissolved.    The effect of this legislation
was to destroy the corporation so that no suit could be brought
against it, and that a judgment secured in a suit prosecuted
against the corporation, if before or pending the suit the
corporation was thus dissolved, was void.    (*Newhall* v. *West-
ern Zinc Min. Co.*, 164 Cal. 380, [128 Pac. 1040] ; *Crossman*
v. *Vivienda Water Co.*, 150 Cal. 575, 580, [89 Pac. 335].)
"It is settled beyond question that, except as otherwise pro-
vided by statute, the effect of the dissolution of a corporation
is to terminate its existence as a legal entity, and render it
incapable of suing or being sued as a corporate body or in its
corporate name.    It is dead, and can no more be proceeded
against as an existing corporation than could a natural person
after his death.    There is no one who can appear or act for

it, and all actions against it are abated, and any judgment attempted to be given against it is void. . . . Statutes similar to our section 400 of the Civil Code above quoted do not have the effect of continuing the existence of the corporation as *cestui que trust,* or otherwise, so as to render it capable of defending actions in its corporate name.'' (*Crossman* v. *Vivienda Water Co., supra.*) The effect of this legislation was very far-reaching and disastrous. Corporate charters were forfeited without any knowledge on the part of the creditors of such forfeiture. The Governor of the state, on June 1, 1906, in his call for an extra session of the legislature, specified as one of the purposes of such session the amendment of the statute of 1905, ''so as to increase the license tax on such corporations, . . . and provide for the revival, under certain conditions, of the corporations which have not paid their tax, and make provision for settling the affairs of corporations where said license tax has not been paid; . . . '' The legislature, on June 13, 1906, at its special session, passed an act amending the law of March 20, 1905 (Stats. 1907, Extra Sess. 1906, p. 22), by amending every section thereof excepting the section providing for appropriations, and adding two new sections, 10a and 10b. Section 6 provided that by payment of the delinquent license tax between July 1, 1906, and September 6, 1906, with penalties therein provided, the corporation ''shall be relieved from the forfeiture prescribed by the act, and all persons exercising the powers of any such corporation making such payment shall be relieved from the provisions of section nine of the act.'' Section 10a was added in the same terms as above quoted from the amendment of 1907 (Stats. 1907, p. 745; Extra Sess. 1906, p. 22). The amendments of 1907 (Stats. 1907, p. 745) further defined the rights of creditors upon such dissolution, by adding two provisos, as follows:

''Provided always that no action pending against any corporation shall abate thereby, but may be prosecuted to final judgment and the same may be enforced by execution with the same force and effect and in like manner as though no forfeiture has occurred; and

''Provided further: That where judgment has been entered against any corporation prior to forfeiture under this act, that notwithstanding execution may be issued thereon and the property of said corporation, or which may come into the

hands of any trustees for it may be levied upon, seized and sold to satisfy the same with like force and effect as though such forfeiture had not occurred.''

By the various amendments to the law of 1905 (Stats. 1905, p. 493), opportunity was given to pay the tax and thus revive the corporation.    (Stats. 1907, Extra Sess. 1906, p. 22; 1907, p. 745; 1909, p. 454; 1911, p. 1094; 1913, pp. 513, 680; 1915, p. 422; 1917, pp. 371, 378.)    So that, while the legislature of 1905 contemplated the complete dissolution and settlement of the affairs of the corporation, all the subsequent legislation on the subject, beginning with the special session of 1906, looked to the revival of the corporation.    The rights of the creditors to seek the aid of a court of equity to supervise and direct the trustees must be determined in the light of this policy. The creditors have the right to sue the trustees (Stats. 1907, p. 746, sec. 10a) to recover their claims.    In *Rossi* v. *Caire,* 174 Cal. 74, [161 Pac. 1161], this court had under considera- tion the right of a stockholder to force a sale of the very ex- tensive and valuable property of the corporation for the pur- pose of winding up the affairs of a defaulting corporation. It was there held that the purpose of the law was to vest the trustees with a discretion as to the sale which could not be controlled by a court of equity, except in case of an abuse of power.    The court there said: ''In order to justify the in- terference of a court, says the supreme court of Alabama, the mere fact of dissolution, or forfeiture of the charter, is not enough.    The facts appearing 'must be of a character to show that the trustees are incompetent, or unfaithful, or are mis- managing the property to the injury of the complainant, or are without power and authority to subserve some peculiar interest or right of the party complaining and that he is being injured thereby.'    (*Weatherly* v. *Capital etc. Co.,* 115 Ala. 172, [22 South. 142].)    This language was used with refer- ence to an application for the appointment of a receiver to take charge of and administer the corporate assets, as also was the language in the Havemeyer case, but the same principles apply to any application for the intervention of the judicial power to supersede, supervise, or control the powers conferred by the statute upon the trustees.''    **[2]**    It follows, therefore, that the creditors must ordinarily seek the usual remedies at law, and the question in this case is whether sufficient facts are stated to justify an application to a court

of equity, and if not, whether a cause of action at law is stated. It appears from the complaint that one of the directors of a defunct insolvent corporation, in custody of its funds as such official of the company, seeks to appropriate the major part of its assets to his own claim, in violation of his duty to the corporation, its stockholders and creditors. (*Title Ins. & Trust Co.* v. *California Development Co.,* 171 Cal. 173, 214, [152 Pac. 542], citing with approval Morawetz on Corporations, sec. 787.) The findings are to the effect that two of the three directors consented to such an arrangement, but that subsequently one thousand dollars was returned to the custody of trustee Olson. Without undertaking to define the duties of such directors to creditors, it is clear that the directors cannot, with due regard to their duties to stockholders and to creditors, pay themselves from the funds held in trust for all the stockholders. **[3]** Where it is apparent, as it is here, that the directors or trustees are using their power and authority for the purpose of benefiting themselves at the expense of both creditors and stockholders—for the stockholders are interested in having the best terms possible made with the creditors—and where relief has been sought in the only legal tribunal that could defeat such a preference, and where the corporation is insolvent, the interest of the creditors in the fund is sufficient to justify the interposition of a court of equity at the instance of a creditor.

Plaintiffs in this action sought to invoke the power of a court of equity, praying, among other things: "That the said defendant, Herbert Choynski, be declared and held trustee of said sum of $1,598 . . . for the benefit of plaintiffs and any and all creditors . . . who come in this action and establish their claims. . . . " Notwithstanding this prayer and that the court found the fact to be that $598 was in the possession of the respondent under circumstances which charged him with a trust in favor of the creditors and stockholders of the corporation, the judgment rendered was that plaintiffs take nothing and defendant have judgment for costs. Such a judgment was erroneous. The complaint was framed in three counts. Most of the allegations in each were the same, the allegations of the first count being incorporated into the second and third counts by reference. In the first count it is alleged that there were three trustees of the corporation, one of whom was the respondent, at the time of the dissolution.

In the last count it was alleged that "one Henry Olson was the only director of said corporation in office and engaged in the management of its business and affairs." In the first count it was alleged that the respondent agreed with his co-trustees Olson and Hawkinson that he would apply the sum of $1,598 received by him in payment of the claims of the creditors of the corporation, while in the last count it was alleged that this agreement was made between respondent and Olson, as the only director of the corporation in office and who was managing its affairs at the time of its dissolution. It appeared from the evidence to the satisfaction of the trial court that there was no specific agreement on the part of the respondent to use said money in payment of appellant's claim, and that the money was held by him as one of the three trustees of the corporation. **[4]** Respondent's claim that he held the money in his own right by virtue of his agreement with Olson that the amount should be applied to respondent's indebtedness is not tenable, for a director, "who is at the same time a creditor is precluded from using his position as director to obtain a preference over other creditors in the payment of his own claims." (*Title Ins. etc. Co.* v. *California Dev. Co.*, 171 Cal. 173, 214, [152 Pac. 542].) Hence the application of the money in the hands of the respondent in payment of his own claim was void, and the finding of the court in that regard is in legal effect a finding that the $598 was held by the respondent as one of the three trustees of the defunct corporation. In order to determine the controversy before the court, to wit, the ownership of the $1,598, $598 of which was conceded to be in the hands of the respondent, it was, therefore, necessary that the other two trustees be joined as codefendants. **[5]** It was the duty of the court, if no application was made therefor, to require the pleadings to be amended so as to bring in the other two trustees, for there could be no adjudication binding upon the property of the corporation in their absence. (Code Civ. Proc., sec. 389; *Grain* v. *Aldrich,* 38 Cal. 514, 522, [99 Am. Dec. 433]; *O'Connor* v. *Irvine,* 74 Cal. 435, 443, [16 Pac. 236]; *Alison* v. *Goldtree,* 117 Cal. 545, 550, [49 Pac. 571]; *Mitau* v. *Roddan,* 149 Cal. 1, [6 L. R. A. (N. S.) 275, 84 Pac. 145].) The defendant alone would not have authority, by default or otherwise, to bind the property of the corporation.

(*Newhall* v. *Western Zinc Min. Co.,* 164 Cal. 380, 383, [128 Pac. 1040]; Stats. 1907, p. 746, sec. 10a.)

The trial court made no finding as to the statute of limitations. It appears from the record that on September 25, 1907, the Olson's Market Incorporated acknowledged plaintiffs' claims in writing. The original complaint was filed September 16, 1910. If these facts are true, the four-year period for commencing an action after such acknowledgment had not then elapsed. The evidence on a new trial, however, may be different, and we need not, therefore, pass on the question.

The judgment is reversed and the trial court is directed to grant plaintiffs leave to amend their complaint to join the other trustees of the Olson's Market Incorporated as codefendants, and to make other appropriate amendments to determine the rights of the plaintiffs in and to the fund in the hands of the defendant.

Melvin, J., and Lennon, J., concurred.

SHAW, J., Concurring.—I concur in the judgment.

The complaint and the findings showed that Choynski held $598 as trustee for the creditors and stockholders of the defunct corporation; that he denied the trust and applied the money to his own use, and that the two other directors were also trustees to administer and settle the affairs of said corporation bound to the same duties as Choynski. The court had full authority in a suit against Choynski alone to give judgment declaring that he held that sum as such trustee. But it could not go further and direct the administration and distribution of the trust funds, unless the two other trustees were parties to the suit.

Under these circumstances, if the plaintiffs or Choynski had asked to have the other two trustees made parties, it would have been the duty of the court to grant the application, have the parties brought in by proper amendment, proceed to determine the entire controversy, and order that the trust be settled. The cases cited in the opinion of Justice Wilbur so declare. But I do not think they are authority for the proposition that the court was bound of its own motion to require the pleadings to be amended so as to bring in the other two trustees. In other words, if the court below had, upon

the complaint and findings, given judgment that Choynski had $598 in his possession and that he held the same in his capacity as one of the trustees of the defunct corporation, for the benefit of the stockholders and creditors, including the plaintiffs, I do not think this court would be justified in reversing the case because it did not, of its own motion, go on and have the other parties brought in so as to give relief which no one had prayed for. In all other particulars I agree with the opinion of Justice Wilbur.

Lawlor, J., and Olney, J., concurred.