## St. Clair Estate Co., a Corporation, Petitioner, *v.* Commissioner of Internal Revenue, Respondent

Docket Nos. 105112, 108827, 109162.   Promulgated September 24, 1947.

*James McRoberts, Esq.*, and *Harold C. Morton, Esq.*, for the petitioner.

*Byron M. Coon, Esq.*, for the respondent.

**OPINION.**

KERN, *Judge*: Section 351 of the Revenue Act of 1936 and its counterparts, section 401 of the Revenue Act of 1938 and section 500 of the Internal Revenue Code, imposed a surtax on undistributed net income of personal holding companies. Sections 351 of the Revenue Act of 1936, 405 of the Revenue Act of 1938, and 504 of the Internal Revenue Code contain definitions of the undistributed income which is subject to the tax and provide that in arriving at the amount thereof an allowance is to be made of the dividends paid credit provided in section 27 of such acts and the code, subject to specified limitations. For present purposes, the dividends paid credit provided in section 27 is the amount of "dividends paid during the taxable year," excluding preferential dividends and distributions not taxable as dividends in the hands of the stockholders. For the purpose of the credit, distributions in liquidation, to the extent chargeable to the earnings or profits accumulated after February 28, 1913, are to be treated as taxable dividends paid.

For the purpose of computing its personal holding company surtax, the petitioner took dividends paid credits of $23,954.89, $24,000, $47,000, and $26,000 for 1937, 1938, 1939, and 1940, respectively. The re-

spondent allowed the credit taken for 1937 to the extent of $14,000 and disallowed the balance of the credit taken for that year and the entire amount of the credits taken for the other years. The petitioner contends that on the situation here presented it was entitled to credits of $24,000 for each of the years 1937 and 1938 and that for 1939 and 1940 it was entitled to credits in the amount of its net income for such years, such amount being less than the amount declared and paid as dividends in the respective years. The respondent takes the position that his action was proper and should be sustained.

## Year 1937.

The dividends paid credit of $24,000 contended for by petitioner for 1937 is composed of two amounts, namely, $14,000 and $10,000. The $14,000 represents the amount of the dividend declared by petitioner's directors at their meeting on December 16, 1937, and has been allowed by respondent as a dividends paid credit. The remaining amount of $10,000 represents what the petitioner's directors, in a resolution adopted at their meeting on December 16, 1937, described as "the dividend of TEN THOUSAND DOLLARS declared February 1, 1936" and which the stipulated facts show was, on February 1, 1936, credited as dividends in the amount of $2,500 to each of the petitioner's four stockholders, made subject to their withdrawal, reported by them as dividends in their 1936 income tax returns, and also similarly reported by them in their 1937 returns. Everett St. Clair, for many years the president and general manager of the petitioner, testified that the check of $5,200 issued by petitioner to him on December 26, 1937 ($800 having been previously paid to him), and the checks issued on the same date to his brothers in the amount of $6,000 each, were issued with the intention and for the purpose of paying dividends for 1937. In this conflicting evidentiary situation the petitioner contends that it declared and paid $24,000 in dividends in 1937 and, therefore, is entitled to have the above mentioned $10,000 allowed as a dividends paid credit in that year.

In our opinion the $10,000 in question clearly represents a dividend which was declared on February 1, 1936, and was credited to each of the four stockholders and made subject to their withdrawal in that year. Where, during its taxable year, a corporation declares a dividend, credits the amount thereof to its stockholders, and makes it subject to their unrestricted demand and control, such action is the equivalent to payment of a dividend for the purpose of the dividends paid credit and entitles the corporation to a credit for the year of such action. *Valley Lumber Co. of Lodi*, 43 B. T. A. 423. It follows that petitioner was entitled to a dividends paid credit on account of the

$10,000 dividends in 1936. It is obvious, therefore, that petitioner can not claim such credit for 1937. It is true that in 1937 checks were drawn in favor of the brothers in amounts which included their share of the $10,000 dividend credited to them in 1936. But the drawing of such checks in 1937 does not, in our opinion, alter the fact that the stockholders constructively received $10,000 in dividends and petitioner was entitled to and may have taken a dividends paid credit on account thereof in 1936. In so far as the amount of checks drawn in 1937 represented the $10,000 of dividends credited to the stockholders in 1936, it must be considered as a withdrawal of an amount previously credited and previously received constructively. We therefore hold that petitioner is not entitled for 1937 to a dividends paid credit to the extent of $10,000 of the $24,000 claimed for that year. The remaining $14,000 has been allowed by respondent and there is, therefore, no issue for our consideration with respect thereto.

In its petition and in its opening brief the petitioner contended that in event we should decide that it was entitled to a dividends paid credit of only $14,000 for 1937, then we should hold that the payments of $6,000 made to each of the three brothers in 1937, or $18,000, was allowable as a credit for amounts used to retire indebtedness incurred prior to January 1, 1934. On closing brief the petitioner limits to $10,000 the amount of the credit sought for retirement of indebtedness.

Section 355 of the Revenue Act of 1937, amending Title I-A of the Revenue Act of 1936, provides for the reduction of undistributed income subject to personal holding company surtax by:

(b) Amounts used or irrevocably set aside to pay or to retire indebtedness of any kind incurred prior to January 1, 1934, if such amounts are reasonable with reference to the size and terms of such indebtedness.

We think it is clear that the above quoted provision has no application to the payments in question. The cash and checks representing payment of the dividends can not conceivably be regarded as having been used or irrevocably set aside to pay or to retire any indebtedness of the company. The trustee received cash, and in any event the company was not indebted to the trustee. E. S. St. Clair received $800 cash and a check for $5,200, which he cashed in January 1938. F. C. St. Clair received a check for $6,000, which was cashed in March 1938. L. P. St. Clair never actually received his check for $6,000 although it was available to him, and in December 1938 the check was canceled and his dividend account was credited with the amount thereof. Under these facts, it seems to us obvious that there was no payment of an indebtedness or a setting aside of funds for that purpose within the meaning of the statute. Petitioner does not claim that the pertinent indebtedness was its liability to pay the dividends declared, but refers

to other indebtednesses owing to the St. Clair brothers. We think this contention is without merit.

## Year 1938.

With respect to 1938, respondent argues that no dividends paid credit can be allowed petitioner, because there was no payment of dividends by petitioner and, in fact, payment was prohibited by state court order. Petitioner argues that it is entitled to such credit, since dividends were declared in 1938, the validity of which is not questioned, and since such dividends were credited to the accounts of the three brothers and actually paid in cash to Cora through her trustee. Petitioner contends that it did everything possible toward payment of such dividends within the limits of the court order, that the stockholders reported and paid the tax on such dividends as income, and that, therefore, it should be allowed a dividends paid credit thereon.

The credit is claimed under section 27 of the Internal Revenue Code. Subsection (a) (1) provides that "dividends paid credit" means the sum of "basic surtax credit * * * computed as provided in subsection (b)" and (in subsection (a) (4)) "amounts used or irrevocably set aside to pay or to retire indebtedness." Subsection (b) (1) defines basic surtax credit as "the dividends paid during the taxable year."

Thus it is noticeable that amounts for retirement of "indebtedness" might constitute dividends paid credit whether actually "used" or only irrevocably set aside for that purpose; whereas dividends, to be basis for credit, must be "paid." The difference is significant.

Logic forbids us to regard the dividend declared here as paid, for it could not be paid, in the face of the restraining order, and the order was not violated; and for the same reason the stockholders (except Cora) can not be considered as having received the dividend. There was no money "thoroughly subject to the demand and control of the shareholder" as in *Valley Lumber Co. of Lodi, supra,* or credit "without restriction as to withdrawal," as in *Atlantic Land Co.,* 43 B. T. A. 74. On the contrary, there was positive restriction and negation, by the court's order, of the necessary payment, command, or control. In the absence here of both payment and of command or control by the stockholder, the dividends paid credit should be, and is, denied.

There was actual payment to the trustee for Cora of $6,000, the amount of the dividend to her declared on December 23, 1938, but the $6,000 had been paid monthly throughout 1938, the last payment being on December 8, 1938, therefore more than two weeks prior to the declaration of the dividend. Clearly, such a distribution fails to qualify as basis for dividends paid credit, in the light of section 27

(h) of the Internal Revenue Code,[1] requiring that the distribution be pro rata with no preference to any share as compared with other shares of the same class, and with no preference to one class of stock over another. In *Safety Convoy Co.* v. *Thomas*, 139 Fed. (2d) 219, section 27 (g) of the Revenue Act of 1936, the same in effect as section 27 (h) of the Internal Revenue Code, was held to prohibit dividends paid credit for distributions not in proportion to the percentage of stock and not made to all shareholders on the same dates. The court said:

\* \* \* It is the sense of the statute that a dividend must be paid in equal amount upon each share of stock in any given class, and must be paid at the same time, if the dividends-paid credit is to be made applicable.

To the same effect is *Black Motor Co.* v. *Commissioner*, 125 Fed. (2d) 977, wherein, during the taxable year, the stockholders received different percentages of a dividend declared.

### Years 1939 and 1940.

The next question concerns dividends paid credit for 1939 and 1940. The pertinent facts relating appear to us to be as follows: Petitioner was a family holding corporation. One-fourth of its stock was held beneficially by Cora St. Clair, and the remaining three-fourths equally by her three brothers, who conducted its affairs. On December 22, 1938, Cora brought suit against petitioner and her three brothers, asking, among other things, for a dissolution of petitioner and for an accounting. On the next day the directors of petitioner adopted resolutions providing for the winding up of petitioner's affairs and its voluntary dissolution. On January 10, 1939, Cora instituted another action in the state court, in which she asked for court supervision of the winding up of petitioner's affairs. This petition was granted and an order was entered to the effect that no distribution should be made of petitioner's assets or property, other than in the ordinary course of business, except by order of the court. Pending the hearing and decision of Cora's action for an accounting there was, during the taxable years, no liquidation of petitioner's assets or property incident to a winding up of its affairs, and no distribution was made or ordered by the court to petitioner's stockholders representing,

---

[1] SEC. 27. CORPORATION DIVIDENDS PAID CREDIT.
\* \* \* \* \* \* \*

(h) PREFERENTIAL DIVIDENDS.—The amount of any distribution (although each portion thereof is received by a shareholder as a taxable dividend), not made in connection with a consent distribution (as defined in section 28 (a) (4)), shall not be considered as dividends paid for the purpose of computing the basic surtax credit unless such distribution is pro rata, with no preference to any share of stock as compared with other shares of the same class, and with no preference to one class of stock as compared with another class except to the extent that the former is entitled (without reference to waivers of their rights by shareholders) to such preference.

or purporting to represent, the proceeds of any such liquidation as a step in the winding up of the petitioner corporation. Petitioner had been enjoined in December 1938 from paying any dividends and, therefore, could not pay dividends in the sum of $24,000 which had been declared on the day when the injunction was served on it. In April 1939, pursuant to an order of the state court, the dividends declared in 1938 were paid. In order to avoid the heavy surtaxes imposed on the undistributed income of personal holding companies, there was obtained from the state court on December 27, 1939, an order authorizing and directing the petitioner to pay to its stockholders dividends in amounts up to its net earnings for the year 1939; and the directors, estimating that petitioner's net earnings for that year would be $23,000, declared a dividend in that amount, which was paid forthwith. Petitioner's net income for 1939 proved to be $21,417.48. For the same purpose, dividends totaling $26,000 were paid by petitioner to its stockholders in 1940, pursuant to orders of the state court authorizing and directing the payment of dividends out of petitioner's earnings for 1940.[1] Petitioner's directors, in declaring such dividends, estimated that its net earnings for that year would be $26,000. Petitioner's net income for 1940 proved to be $19,107.58. As to both 1939 and 1940 petitioner, on brief, claims a "dividends paid" credit in the amount of its earnings for those years. Its earned surplus was in excess of $150,000.

Petitioner was technically in the process of liquidating its affairs. However, there had been no actual liquidation of its assets during the taxable years and no distributions of cash to its stockholders which represented the proceeds of any liquidation. During 1939 and 1940 petitioner was in a state of suspended animation, pending the determination of an action for accounting. During this period it received income. Since it was a personal holding company, a failure to distribute this income to its stockholders would have had serious tax results. Accordingly, and for the purpose of accomplishing exactly what the personal holding company provisions of the Federal taxing statutes contemplated, it purported to distribute this income by way of dividends. This it did pursuant to orders of the state court having supervision of its winding up, which characterized them as dividends out of earnings. Any other dividend or distribution would have been in violation of the court's injunction. Since petitioner was technically in liquidation, we shall assume, *arguendo*, that the so-called dividend distributions were distributions in liquidation. Therefore, the sections of the Internal Revenue Code applicable to the question before us are sections 27 (g) and 115 (c), which are set out

---

[1] One of the four orders entered in 1940 authorized and directed the payment of dividend "out of * * * income on hand."

in the margin.[2] That question is, What part of the distributions made by petitioner in 1939 and 1940 is properly chargeable to its capital account, and what part is properly chargeable to the earnings and profits accumulated after February 28, 1913?

In cases where a distribution to stockholders is made by a corporation in the actual process of liquidation, partly from capital liquidated and available for distribution and partly from earnings or profits, and there is no definite proof of what part of the distribution is properly chargeable to capital and what part is properly chargeable to earnings or profits, the distribution is allocable between capital and earnings or profits in the ratio that each bears to the total of the capital and earnings or profits of the corporation. *Woodward Investment Co.*, 46 B. T. A. 648; *Shellabarger Grain Products Co.*, 2 T. C. 75; affd., 146 Fed. (2d) 177. In the latter case we said:

> * * * Since in the case of distributions in liquidation or partial liquidation the order thereof as between earnings or profits and capital is not fixed by the statute, we know of no better or more accurate way of determining what part of a distribution in partial liquidation is properly chargeable to capital and what part to earnings or profits than to consider the facts of the particular case and apply as best we can the rule of reason. In *Woodward Investment Co.*, 46 B. T. A. 648, a distribution in partial liquidation of the corporation was made pro rata. on all of the outstanding stock without regard to the amount of earnings or profits or of capital available for distribution and without regard to the par or stated value of the stock. It was there concluded that the distribution was properly allocable between capital and earnings or profits in the ratio that each bore to the total of the capital and earnings or profits of the corporation. That case is directly in point and will be followed here * * *.

As to a similar method of allocation applicable in the absence of identifying proof, see *Estate of Howard H. McClintic*, 47 B. T. A. 188, 200.

In *Shellabarger Grain Products Co.*, supra, the corporation had effected a complete actual liquidation of its assets and business prior to the distribution in question, receiving from the sale of the assets an

---

[2] SEC. 27. CORPORATION DIVIDENDS PAID CREDIT.

   \*      \*      \*      \*      \*      \*      \*

    (g) DISTRIBUTIONS IN LIQUIDATION.—In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purposes of computing the basic surtax credit under this section, be treated as a taxable dividend paid.

SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

   \*      \*      \*      \*      \*      \*      \*

    (c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. * * * In the case of amounts distributed (whether before January 1, 1939, or on or after such date) in partial liquidation (other than a distribution to which the provisions of subsection (h) of this section are applicable) are part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. * * *

aggregate cash consideration of $262,464. Immediately thereafter the directors of the corporation took the following action:

> The President stated to the Directors that it would be well to distribute as dividends an amount equal to the entire estimated earnings and profits of the Company for the current fiscal year in order that the Company be under no liability for undistributed profits tax. After discussion of the matter, on motion duly made and seconded it was unanimously,
>
> RESOLVED, that a dividend of $35.00 a share be and the same is hereby declared upon the outstanding capital shares of the Company, payable immediately to shareholders of record at this date.

This dividend amounted to $67,550. Less than two months later the corporation made another distribution to its stockholders of $67,550 as a liquidating dividend and distribution. For the fiscal year in which the first distribution took place, the corporation reported a net income of $56,259. At the beginning of that year it had an operating deficit of $53,203. The corporation was in the process of voluntary dissolution, without court supervision. It is apparent that the amount of the first distribution had no relation to the amount of earnings and profits available for distribution. On the contrary, it is apparent that it was one of two equal distributions in liquidation made after the actual liquidation in cash of all the assets and the entire business of the corporation, which was merely stated by the president (and erroneously) to be "an amount equal to the entire estimated earnings and profits of the Company for the current fiscal year." In the absence of proper proof identifying the amount of the distribution in liquidation "properly chargeable to earnings and profits accumulated after February 28, 1913," we followed the method of allocation above described.

In the instant case we are of the opinion that the facts, which we have already related in detail, disclose, beyond reasonable doubt, that the distributions made by petitioner in 1939 and 1940 were properly chargeable to its earnings or profits to the extent of its stipulated net income for those years. It is only to this extent that petitioner now claims dividends paid credits on account of the distributions made in 1939 and 1940.

In a consideration of the petitioner's claim for a dividends paid credit for the year 1938 on account of its declaration of a dividend in that year, we commented on the lack of logic in regarding that dividend as paid in that year in view of the restraining order then in effect prohibiting payment. That restraining order was relaxed in the years 1939 and 1940 only to the extent of permitting the payment of dividends out of earnings. There were no receipts by petitioner during these years from the sale or conversion of its capital assets aside from inconsequential liquidating dividends received by it as stockholder of other corporations. Petitioner's accumulated earnings and profits were in excess of $150,000. The amounts of the dividends paid in

1939 and 1940 were approximately equivalent to its gross income (not including loans or liquidating dividends) for those years, and only slightly in excess of its net income calculated for Federal tax purposes. Under these circumstances, we are of the opinion that there would be a similar lack of logic in considering the distributions made in those years, to the extent that they were equivalent to petitioner's net income, as being properly chargeable to capital.

Regardless of the form of words used in the court orders authorizing the payment of the dividends in question, and the corporate resolution declaring them, it is evident from the entire record before us that petitioner, its directors, and the court having supervision over its winding up intended those distributions to be only such distributions as would conform with the economic and fiscal policies encouraged by the personal holding company provision of the Federal revenue laws and would distribute its earnings to its stockholders during the long period of time between petitioner's decision to dissolve and its actual liquidation. It would be unfortunate if we were forced to a conclusion that petitioner, nevertheless, was subject to the penalizing provisions of those statutes. Such a conclusion is not required by the Internal Revenue Code or by the decided cases. To the contrary, we conclude that petitioner is correct in claiming dividends paid credits for 1939 and 1940 in the amount of its earnings for those years.

We have found as a fact that $1,572 received by the petitioner in 1938 as dividends from Transamerica Corporation constituted a return of capital. We have further found that $124.06 of the $1,000 in dividends received by petitioner in 1938 from the Honolulu Oil Corporation constituted a return of capital. These findings are based on the stipulation of facts. Respondent has offered no evidence on this question and has made no argument thereon on brief. We hold that respondent erred in adding such amounts of returned capital to petitioner's 1938 income.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

HILL, J., dissenting: I disagree with the conclusion of the majority in respect of the year 1938. The result reached by the majority as to that year is, in my opinion, not within the intendment of Congress. It is certainly harsh. So harsh, I think, as to be almost, if not quite, unconscionably discriminatory against petitioner in the administration of the dividends paid credit provisions of the statute. Also, I think, under a proper interpretation of the literal provisions of the statute the result reached by the majority is erroneous.

In 1938 dividends were declared and the dividend accounts of the several stockholders were credited therewith. Petitioner had ample earnings and ready funds for the payment of the dividends. In fact, the dividends to Cora had actually been handed over to her in 1938. The money in payment of dividends to the other stockholders would also have been handed over to them in 1938 but for an order of the Superior Court of California restraining such action. The stockholders reported these dividends as income for 1938 and paid taxes thereon. Under the facts here, I think they were legally bound to do so. Petitioner took the necessary steps to make the stockholders taxable in 1938 on the dividends credited. The purpose of the tax on the undistributed income of personal holding companies was to prevent the avoidance or postponement of taxes and to encourage current distribution of income so that the recipient stockholders would pay taxes on such income. This purpose has been fully served in the instant case. Under these circumstances, to deprive petitioner of a dividends paid credit is, I think, unjust and purposeless.

The majority considers that "logic" forbids the allowance of the credit. I do not agree. When the directors resolved to dissolve petitioner in 1938 they thereupon became trustees for the stockholders and creditors. *Fletcher, Cyclopedia Corporations*, § 8174; *Hanson* v. *Choynski*, 180 Cal. 275; 180 Pac. 816. When the dividends in question were declared and credited they became a fund held by the trustees for the stockholders. The stockholders thereby received such dividends through their agents, the trustees. The fact that the trustees, as agents, were temporarily enjoined by local law from delivering actual physical possession of the dividends is no bar to constructive receipt. *H. L. Carnahan*, 21 B. T. A. 893; *Sara Twohy*, 34 B. T. A. 444; *Heiner* v. *Gwinner*, 114 Fed. (2d) 723; *Bonham* v. *Commissioner*, 89 Fed. (2d) 725. See also I. T. 3415, C. B. 1940-2, p. 88, and I. T. 3802, 1946 I. R. B. No. 11, p. 5. There was no dispute or question as to the amount or the ownership of the dividends. That ownership was in the stockholders and not in petitioner. The dividends were temporarily impounded to assure their application toward discharge of the individual obligations of the stockholder-defendants to petitioner in the event the court in the pending action against them should decree that such obligations exist. The action of the court in modifying its restraining order to enjoin only the payment of the dividends was a recognition of the right of petitioner to declare and credit the dividends to the stockholders. The impoundment of the moneys representing the dividends declared and credited was a recognition of their ownership in the stockholders. The order of the court restraining petitioner or the trustees of the liquidating corporation from handing over the dividend moneys to the stockholders operated only as an attachment or garnishment of

the stockholders' dividend money to secure payments of their obligations if and when it should be determined by the court that there were such obligations. In impounding the dividend moneys in the coffers of petitioner the court was dealing not with the petitioner's funds, but with the moneys and obligations of the stockholders. Thus. I feel that logic not only does not support the majority view herein, but supports my individual views herein expressed.

ARNOLD and HARLAN, *JJ.*, agree with this dissent.

---

DISNEY, *J.*, dissenting: On the question of dividends paid credit for 1939 and 1940, I must dissent. The majority opinion, though agreeing that "technically" the petitioner was in process of liquidating its affairs, nevertheless comes to the view that the dividends here involved were to be charged entirely to earnings and profits and, therefore, dividends paid credit should be allowed. The majority opinion, citing *Shellabarger Grain Products Co.*, 2 T. C. 75; affd., 146 Fed. (2d) 177, agrees that if there is no definite proof of what part of distribution is properly chargeable to capital and what part is properly chargeable to earnings or profits, the distribution is allocable, yet holds that here there was proof, so that no part was allocable to capital. In short, it permits proof of earnings and profits to remove a liquidating corporation from that category, disregards altogether section 115 (c), and treats a liquidating corporation the same as any other.

Since something seems to be made of the idea that the restraining order restrained distribution of assets or property other than in the ordinary course of business, except by order of the court, I gather that the majority thought is that in the ordinary course, not liquidating, the corporation could distribute the dividends here involved, and get dividends paid credit. In the first place, if these dividends had been in ordinary course, and so not by way of liquidation, then, on the majority's logic, no orders would have been necessary. But orders were asked for and issued, indicating that the court and the parties did not consider the distributions in the ordinary course of business. Moreover, more appears made of the restraining order than the facts justify; for the restraining order, in using the expression as to acts in ordinary course of business, referred specifically to, and the language was, "From altering, removing, disposing of, and destroying any of the books, records, books of account, property or assets [of St. Clair Estate Co. and many others] or any part of said records or property, excepting in the general and ordinary course of business * * *" (with nothing said about dividends or distributions); whereas the succeeding paragraph, dealing with dividends.

enjoins them "until an accounting is had herein." I suggest, therefore, that no weight can be accorded any thought that there was no restraint of ordinary dividends in ordinary course of business.

Next, I must strongly disagree with the concept that here there was not, more than "technically," liquidation. Not only had the directorship voted and embarked upon dissolution and liquidation, but that was *the basis of the jurisdiction which the court exercised in authorizing the dividends.* It is stipulated that Cora M. St. Clair, et al., filed an action in the Superior Court on January 10, 1939, "for Court supervision of the winding up of the affairs of petitioner, as set forth in its resolution of December 23, 1938, as provided for in the California Civil Code, Section 403." The petition also recites that it is "made and filed pursuant to the provisions of Section 403 of the California Civil Code."[1]

But section 403 reads in material part:

> If a corporation is in the process of voluntary winding up, the superior court * * * upon the petition of the corporation [or holders of a certain percentage of stock] * * * shall have power to order and adjudge as to any or all matters in and for the winding up of the affairs of the corporation including: * * *

How, then, may it be said that this corporation was not in fact in dissolution and that distributions were not an integral part of liquidation? Unless a liquidating corporation can make ordinary distributions from earnings, in my view, the distributions here must be allocated between capital and earnings.

We have here a distribution in partial liquidation. Section 115 (c) of the Internal Revenue Code provides on this point:

> * * * and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. * * * [Then follows the provision for determination of gain or loss to the distributee.] In the case of amounts distributed * * * in partial liquidation * * * the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits. * * *[2]

---

[1] The petition also alleges: "Said corporation is in process of winding up as evidenced by the fact that on the 28th day of December 1938, there was filed in the office of the California Secretary of State a certificate stating that said corporation has started to wind up its affairs and voluntarily dissolve * * *." A copy of the certificate certified by the Secretary of State, with the corporate officers' certificate of election to wind up and voluntarily dissolve (filed in the office of the Secretary of State) and written consent of shareholders to voluntary dissolution, were attached to the petition.

[2] The latter sentence precludes consideration of any part chargeable to capital account as a distribution out of earnings or profits, or most recently accumulated earnings and profits, within the language of section 115 (b). Such part, says section 115 (c), is *not* earnings and profits. Moreover, that a distribution in liquidation is not within the purview of section 115 (b) is laid down in *Foster* v. *United States*, 303 U. S. 118; *Fowler Brothers & Cox, Inc.*, 47 B. T. A. 103 (110); affd., 138 Fed. (2d) 774. From 1924 to 1936, section 115 (c) and its predecessor section 201 (c) expressly stated that, of amounts distributed in partial liquidation, the part properly chargeable to capital account should not be considered distribution of earnings or profits, "within the meaning of subdivision (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation." The quoted language was omitted in the 1936 Act and thereafter.

The majority view holds, in effect, that the entire distribution (to the extent of current earnings), though it is in partial liquidation, should be considered "properly chargeable to the earnings or profits." In my view, the contention squarely contravenes the statute. This being a distribution in partial liquidation, it is treated as in either "part or full" payment for the stock being liquidated—and here it was paid on all of the stock alike. It can not, therefore, escape being *in part* chargeable to capital account. Though of course it could *all* be allocable to capital, where definite stock was completely liquidated, as in *Foster* v. *United States*, 303 U. S. 118, and *Fowler Brothers & Cox, Inc.*, 47 B. T. A. 103; affd., 138 Fed. (2d) 774, when it is not so chargeable completely to capital stock, it still remains "in part * * * payment in exchange for the stock," under the statute, therefore partly chargeable to capital account. Otherwise, it is not treated as the statute requires, as in part payment in exchange for the stock.

To permit a corporation to designate a distribution as altogether from earnings and profits would be to say that it was not in liquidation and was paying an ordinary dividend as a going concern. The state court's order herein could not indirectly have more effect than the corporation's designation, for it could not redefine liquidating distribution. Its orders were, in any event, pursuant to stipulation of litigating parties, so by consent and of no effect as judgments. *Freuler* v. *Helvering*, 291 U. S. 35.

We considered the problem of what was properly chargeable to earnings in the case of *Shellabarger Grain Products Co.*, *supra*. In that case the directors' resolution, passed August 10, 1938, read as follows:

The president stated to the Directors that it would be well to distribute as dividends an amount equal to the entire estimated earnings and profits of the Company for the current fiscal year in order that the Company be under no liability for undistributed profits tax. After discussion of the matter, on motion duly made and seconded it was unanimously,

RESOLVED, that a dividend of $35.00 a share be and the same is hereby declared upon the outstanding capital shares of the Company, payable immediately to shareholders of record at this date.

On August 11, 1938, distribution was accordingly made in the amount of $67,550. The income as reported was $56,259; as determined, $65,955. All of the year's earnings or profits were realized prior to the date of the distribution. We held that the distribution was in partial liquidation and that, above the amount of a deficit existing at the beginning of the year, the petitioner had earnings and profits available for distribution and was entitled to dividends paid credit under section 27 (f), to the extent the distribution was properly chargeable to earnings and profits, and we said, in part:

That the distribution of August 11, 1938, was a distribution in partial liquidation, as defined by section 115 (i), *supra*, is definitely shown by the facts. It follows therefore that the character of the distribution must be determined under section 115 (c), *supra*, and not by section 115 (a) and (b), *supra*, under which the character of distributions *by continuing or going* corporations are to be determined. * * *

* * * Unlike subsections (a) and (b) of section 115, *supra*, which govern ·distributions by corporations *other than* distributions in liquidation or partial liquidation and require that such distributions be regarded as having been made from earnings or profits to the extent thereof and from most recently accumulated earnings or profits, subsection (c) prescribes no order as between earnings or profits and capital in so far as distributions in liquidation or partial liquidation are concerned, stating merely that the part of such distributions properly chargeable to capital account shall not be considered a distribution of earnings or profits. * * * [Italics supplied.]

The majority opinion appears to ascribe our conclusion in the *Shellabarger* case to absence of proper proof identifying the amount of the distribution in liquidation. But the proof there was essentially the same as here—the statement of the officers and the condition of the books. Though the majority says the president in the *Shellabarger* case was incorrect in calling the distribution equal to the estimated earnings, it is clear that he was approximately correct, and we did not eliminate from proration the actual earnings shown, in our conclusion there, as would have been necessary under the majority view expressed here, but prorated the entire distribution. It can not be soundly said that our opinion there rested upon indecision as to amount of earnings. We knew that there were earnings in almost, if not quite, the entire amount of the distribution—yet prorated it between earnings and capital, as in *Woodward Investment Co.*, 46 B. T. A. 648. Plainly, we did so because we recognized a difference between a "continuing or going corporation" and a liquidating corporation.

The court orders here, limiting (in part) distributions to current earnings, limit them no more than the fact in the *Shellabarger* case that we were considering only a portion of current earnings. Yet, we there applied the allocation principle. The current earnings were earmarked for distribution even more definitely in the *Shellabarger* case than here, but such earmarking was not there approved. The statute says "properly chargeable to the earnings or profits," not "charged" thereto. Neither parties nor court can change it, or charge capital to earnings.

The theory of allocation, set forth in the *Shellabarger* and *Woodward Investment* cases, *supra*, is in line with and borne out by allocation approved in *Senior Investment Corporation*, 2 T. C. 124, where, in case of passage of a portion of assets between corporations after a tax-free reorganization, we held it proper to allocate earnings and profits in proportion to the assets transferred and assests retained; also

by the allocation in *Stella K. Mandel*, 5 T. C. 684. Therein there were tax-free reorganizations, and question as to the amounts available for distribution by the transferees. It was held that earned surplus acquired after March 1, 1913, followed assets, in proportion thereto, into the hands of transferee corporations. Moreover, we cited and followed *Estate of Howard H. McClintic*, 47 B. T. A. 188, to the effect that "An asset does not ordinarily partake of a character permitting its classification as between capital, on the one hand, and surplus, on the other, and it is not the practice to maintain books of account or balance sheets in such a way that a division or allocation could be made by inspection of the asset or of its accounting treatment." The *McClintic* case goes on to say: "For all that will generally appear, * * * the capital assets as a whole will incorporate the combined attributes of stated capital and paid-in or accumulated surplus. In the absence of other means of allocation it is difficult to avoid treating each asset similarly so that it will be considered as including its proportionate share of the over-all division between capital and surplus." By the same logic a designation can not properly be made of a distribution in liquidation, as being not from capital, but from earnings alone, under the facts in this case, where the distribution is made ratably to the holders of all outstanding stock. Such a distribution "will incorporate the combined attributes of stated capital and paid-in or accumulated surplus," requiring the allocation applied in the *Shellabarger* case.

In *August Horrmann*, 34 B. T. A. 1178, we concluded that the redemption of certain preferred stock was a partial liquidation, and that it therefore became necessary to determine what part of the liquidation is "properly chargeable against capital account" within the statute. In that respect, we said:

* * * Therefore, it would be improper to charge the whole redemption against capital account; such procedure here would wipe out the entire capital account, leaving no capital to represent the common stock still outstanding. The petitioner argues that the whole redemption is properly chargeable against surplus in that the issuance of the stock served only to earmark a part of the surplus. This seems to us equally improper. We are unwilling to disregard the interest which shares of stock represent in the assets of the corporation and to say that they serve only to earmark a portion of surplus. Also, we are unwilling to attempt to earmark shares of stock and say that the redemption of the original shares is entirely chargeable against capital account (to the extent of the amount originally paid in) while the redemption of dividend shares is chargeable in no part against capital. We think that a proportional part of the paid-in capital must be considered as standing behind each of the shares outstanding at any particular time, so that on redemption of any of them a certain part of the redemption is properly chargeable against capital account. * * *

We followed the *Horrmann* case in *F. & R. Lazarus & Co.*, 1 T. C. 292, 299, and quoted most of the language hereinabove quoted from that case. There, we considered a distribution in liquidation, and we disagreed with the contention that the retirement of the stock was entirely chargeable against surplus, allowing dividends paid credit for the amount in excess of paid-in capital standing behind the stock. That amount of capital we found to be the proportion which paid-in capital had to entire outstanding capital.

*Nordberg Mfg. Co.* v. *Kuhl*, 69 Fed. Supp. 750, by the District Court for the Eastern District of Wisconsin, throws some light on this question. The company, being unable to pay its preferred dividends from 1931 to 1937, on February 3, 1937, entered into an agreement with the preferred stockholders that the preferred stock should be deposited with an escrow holder, that payments should be made by dividends and additional amounts, that when these amounted to $1,000,000 the stock should belong to the company, but that in case of default by the petitioner the payments made should be applied, so far as necessary, to satisfy accrued dividends, and any surplus should be applied as a liquidating dividend upon the stock. During 1937 the company paid $109,000 to the escrow agent and contended that it was entitled to dividends paid credit. The court quoted the language of section 115 (c) and upheld the Commissioner's determination that there was partial liquidation and that no part was properly chargeable to earnings or profits. It denied the credit for dividends paid credit. It did not, of course, allocate, or have any occasion to allocate, between amounts chargeable to capital and chargeable to earnings and profits, since the dividends were directly in complete liquidation of a certain part of the stock and, therefore, to be treated "as in full payment in exchange for the stock," under section 115 (c). The court pointed out that the credit is special in the nature of a deduction and an applicant therefor must show exact compliance with the terms of the statute, that is, section 27, which grants the credit. The court specifically said that: "I conclude that, in spite of the designation of the payments made in 1937 as dividends, the agreement of February 3, 1937, discloses an intent on the part of the plaintiff to liquidate its outstanding preferred stock * * *." The court went on to hold that "the payments in 1937 were in partial liquidation of the preferred stock. It follows that a dividends paid credit is not properly allowable * * *."

Indeed, though above I have assumed that in this proceeding the court orders limited distribution to those from current earnings, which is petitioner's argument for allowance of the credit, in fact only three of the orders, those in June and December 1940, provided for payment out of current income. The order of October 3, 1940, merely provided distribution from "income on hand," and that of December 26, 1939,

simply authorized distribution "in amounts up to the net earnings of said corporation for the year 1939." Only $13,000 was then available for dividends and $10,000 was borrowed to make the distribution of $23,000. The corporate resolutions passed under the orders, and declaring the distributions, did not limit the dividends declared to current income, though preliminary recitations indicated intent to escape tax on undue accumulation of current income.

Thus it becomes apparent that in considerable part the distributions here involved are in fact not shown to have been from current earnings, and so within petitioner's theory. Certainly, those in 1939 were merely limited in amount by the earnings of that year. When we consider the fact that the Superior Court had, on April 20, 1939, ordered that the petitioner's affairs be wound up under the supervision of the court, and that no distribution of assets or property (other than in the ordinary course of business) be made except by order of court, and consider the charges made by Cora as basis for the suits filed, it seems apparent that the superior court, in approving the stipulations of the counsel in the cases that the distributions be made, was clearly, in the order made on December 26, 1939, to distribute "in amounts up to the net earnings" for 1939, merely setting a limit on amount, and not in fact designating the distributions as out of 1939 income. The company in fact had no $23,000 to distribute out of 1939 earnings, having to borrow $10,000 to make the distribution.. The superior court may be presumed to have known that a distribution, in the liquidation it was supervising, was no ordinary dividend, *Hellmich* v. *Hellman*, 276 U. S. 233, that distributions are to be regarded as in payment in exchange for the capital stock, and that, after the initiation of dissolution and liquidation, the entire corporate assets became a fund for payment of creditors and stockholders. Therefore, at least as to the distribution in 1939 and the $4,000 distribution "from income on hand" in October 1940, there is no room for finding or for reasonable inference that the court limited a dividend to one derived from current earnings; and, considering the position of the court in the liquidation matter, I think that the other three orders should also be considered as merely designating or limiting the amounts of payment to the amount of 1940 earnings, rather than as designating the distributions as in fact made out of 1940 earnings, so as to enable the petitioner to rely on the orders as proof of that fact. The court had on December 22, 1938, restrained payment of dividends until an accounting should be had. Such accounting was not filed until January 30, 1941. Though the orders allowing distribution, above referred to, were modifications of the general restraining order, I think they were permission to make mere advancements in the process of liquidation, and subject to final accounting, and they do not demonstrate distribu-

tions of income of a particular year. Stockholders in a dissolved corporation have no rights except after all debts have been satisfied, and their remedy is then in equity. Fletcher Cyclopedia of Corporations, vol. 16, § 8224. The administration of the corporation by the superior court was consonant with such general law. It did not, in my view, indicate any determination that the liquidating distributions made were identified as from a particular year's earnings, or any determination that the corporation had such current earnings, or form a basis for a conclusion here that they were properly chargeable to earnings and profits.

Finding no real distinction between this case and the *Shellabarger* case, which was affirmed on this point,[3] and no reason to deviate from the rule announced therein, and affirmed, I would adhere thereto and hold that dividends paid credit for 1939 and 1940 is limited to the ratio of the distributions which earnings and profits bore to the total of capital and earnings and profits. To hold that a liquidating corporation is the same as another, as to dividends paid credits, is to me in the teeth of the statutes, both in text and general objectives. Section 115 (c) says that amounts distributed in partial liquidation must be treated, at least in part, as payment for the stock. How can these words be ignored, as does the majority? I respectfully dissent.

TURNER, BLACK, and HARRON, *JJ.*, agree with this dissent.

---

[3] The Circuit Court said, in part:

"* * * The Tax Court determined that the amount distributed was properly chargeable to capital and accumulated earnings, respectively, in the ratio that each bore to the total of capital and earnings available for distribution. We think this determination was consistent with the requirements of 27 (f) and 115 (c) : that is, it was a correct determination of the part "properly chargeable to the earnings or profits" under the former, and, the part "properly chargeable to capital" under the latter, * * *."