WM. J. LEMP BREWING COMPANY, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30136.   Promulgated June 20, 1952.

*Samuel H. Liberman, Esq.,* and *Richard D. Duncan, Esq.,* for the petitioner.

*Marvin E. Hagen, Esq.,* for the respondent.

588

590

592

OPINION.

LeMire, *Judge:* The first issue presents the question whether, during the taxable years involved, the petitioner was a personal holding company, as determined by the respondent, or a joint venture, as contended by the petitioner. There can be no dispute that the petitioner meets the two requirements specified in section 501 of the Internal Revenue Code for classification as a personal holding company in the event it is held not to be a joint venture. The burden is upon the petitioner to establish the existence of a joint venture. A joint venture has been defined to be a "special combination of two or more persons where, in some specific venture, a profit is sought without an actual partnership or corporate designation." *Tompkins* v. *Commissioner*, 97 F. 2d 396; *Joring* v. *Harriss*, 292 F. 974; *Aiken Mills* v. *United States*, 144 F. 2d 23; *Estate of L. O. Koen*, 14 T. C. 1406.

All the income received by petitioner during the taxable years in question was received pursuant to the contract of August 25, 1939, between petitioner, William J. Lemp, III, and Central Breweries, Inc., the pertinent provisions of which are set forth in our findings of fact. Petitioner relies upon such agreement as creating a joint venture, while the respondent takes the position that such agreement is one licensing Central to the exclusive use of the formulae and trade name or trade mark owned by petitioner, in consideration of the payment of fixed "royalties" on certain quantities of beer manufactured and sold under the trade name of "Lemp."

Petitioner points particularly to paragraph "Sixth" of the agreement as indicative of a joint enterprise. It is therein provided:

It is understood and agreed that it is the mutual desire of all the parties hereto to produce and sell a high quality beer under the "Lemp" name, and to that end the methods of brewing, advertising, and marketing of said beer by First Party are to be agreeable to Second Party; * * *

The significance of such provision, when read in the light of the entire agreement, is that petitioner, having licensed the use of its formulae and trade name, desired to retain the right to supervise the methods of brewing, advertising, and marketing of beer sold under the "Lemp" name for the protection and preservation of what petitioner considered a valuable property right. Since the license granted was for an indefinite period, and could be canceled by Central at will, such a protective provision was a most desirable one. The fact that petitioner's officers conferred and cooperated with the officials of Central in carrying out the spirit of that provision does not indicate to us that the parties intended to engage in the manufacture and sale of beer as a joint enterprise.

The further contention of the petitioner that since the agreement contains a 5-year option to Central to purchase the property rights of

petitioner for an ascertainable consideration establishes that the payments to be made under the agreement were not royalties but profits of a joint venture. We think such a contention is without merit. The option was not exercised. The agreement does not contain any provision for the application of any of the so called "royalty" payments towards the purchase price in the event the option was exercised.

Whether or not the parties to a particular agreement have created the relationship of joint venture, as between themselves, depends upon their intention to be gathered from the entire agreement and their conduct in carrying out its provisions.

The agreement in question makes no mention of sharing either profits or losses. That there is no provision for sharing losses is not controlling, but the element of profit sharing is an important factor in determining whether a joint venture exists. The payments to be made under the agreement are referred to as "royalties." Characterizing them as royalties is not conclusive, if from the entire record it is plain that they were in fact profits. That the payments were not profits seems clear, since they were to be made on the basis of the quantum of beer sold under the "Lemp" trade name, regardless of the realization of profits by Central.

Other evidence bearing on the lack of intention to operate a joint venture establishes that the parties did not maintain a joint bank account, each had separate officers and employees, and each kept separate books and records. Furthermore, neither party filed any partnership returns as required of joint ventures. Secs. 187 and 3797 (a) (2), Internal Revenue Code.

On the basis of the entire record, we conclude that the parties to the agreement of August 25, 1939, did not intend to create the relationship of joint venturers in the manufacture and sale of Lemp beer. The payments made pursuant to such agreement were royalties and constituted personal holding company income as defined in section 502 of the Code. We therefore hold that during the taxable years involved herein the petitioner was a personal holding company within the purview of section 501 of the Code.

The second issue presents the question whether there was a proper imposition of the penalties for failure to file personal holding company returns for the taxable years in question.

Section 291 of the Internal Revenue Code provides for the imposition of a 25 per cent penalty for failure to file a personal holding company return, "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." The burden of establishing reasonable cause is on the petitioner. *Girard Inv. Co.* v. *Commissioner*, 122 F. 2d 843. It has been recognized that reliance upon the advice of counsel or of expert accountants sought and re-

ceived in good faith is reasonable cause for failure to file a tax return. See *Reliance Factoring Corporation*, 15 T. C. 604.

To establish its failure to file personal holding company returns petitioner rests on the testimony of its president, Arthur F. Felker. On direct examination he testified that one Perkins, a certified public accountant, advised him that the petitioner was not a personal holding company and that he relied upon such advice. The time when such advice was rendered was not fixed, nor was it disclosed what facts were given to Perkins, other than the fact that he was shown a copy of the agreement of August 25, 1939. On cross-examination Felker testified that the consultation with Perkins took place in 1940, that Perkins merely advised that petitioner was a "regular" corporation, and the question as to whether or not petitioner was a personal holding company was not discussed.

In the years 1940, 1941, and 1942, prior to the taxable years involved, the petitioner's tax returns were prepared by petitioner's officers. The question on the tax returns as to whether petitioner was a personal holding company was unanswered. Petitioner's tax return for 1943, one of the taxable years in question, was prepared by one of the bookkeepers employed by the Laclede Insurance Agency Company. The question as to whether petitioner was a personal holding company was answered "No," and a similar answer was made to that question on petitioner's returns for the subsequent taxable years 1944 and 1945. Upon the basis of this record, we are unable to conclude that petitioner's officers acted with ordinary business care and prudence.

We, therefore, hold that petitioner has failed to establish that its failure to file personal holding company returns in the taxable years involved was due to reasonable cause and not to willful neglect. The imposition of the 25 per cent penalty in each of the taxable years 1943, 1944, and 1945 is sustained.

The third issue presents the question of the reasonableness of the compensation paid by petitioner to its two officers in the taxable years involved.

Arthur F. Felker was the president and Helen Tischer, secretary and treasurer of petitioner. In the taxable years 1943, 1944, and 1945, each was the owner of 50 per cent of petitioner's capital stock, and each drew identical amounts of compensation. In the taxable years each officer was paid a basic salary of $3,300 and in the year 1944 each received a bonus of $1,000. In determining his deficiencies the respondent allowed as reasonable compensation to Arthur F. Felker the sum of $3,000 and to Helen Tischer the sum of $600 in each of the taxable years involved.

After consideration of all the evidence we have found as an ultimate fact that the amounts which petitioner paid to its president,

Arthur F. Felker, for services rendered to it in the taxable years were reasonable, and for the services rendered by Helen Tischer the sum of $2,000 for 1943 and 1945 and $3,000 for the year 1944. While the petitioner awarded equal compensation to its two officers, on the basis of the evidence set forth in our findings of fact, it is our opinion that the experience, efficiency, responsibilities, services and the time each devoted to the business of the petitioner require us to evaluate the reasonableness of the compensation upon an unequal basis. We have also considered the character of the agreement pursuant to which the petitioner received its income, and the nature of the services entailed by its provisions, that both officers devoted only part time to the business of the petitioner, and both earned outside income for their services, and the further fact that the unique nature of the petitioner's business made it inappropriate to produce evidence of amounts paid by other companies for like services.

The fourth and fifth issues relate to the propriety of the respondent's disallowance in part of certain amounts claimed by the petitioner as deductions representing travel and promotional expenses paid in the taxable years 1944 and 1945. Upon the basis of the evidence, we have found as ultimate facts the amounts incurred and paid for such purposes. We hold that the amounts so found constitute ordinary and necessary business expenses and are properly deductible under section 23 (a) (1) (A) of the Internal Revenue Code.

The sixth issue involves a determination of the petitioner's net loss for the year 1946 for the purposes of a carry-back to prior years.

In determining the petitioner's net loss for 1946, the respondent disallowed $3,000 of the total amount of $6,600 claimed as a deduction for compensation paid to its two officers. The respondent contends that, since petitioner was on the cash basis and the record establishes no such payments have ever been made to such officers, the petitioner is not entitled to any deduction in 1946 on account of officers' salaries and his allowance in part was erroneous. We agree. A taxpayer on the cash basis is not entitled to deduct expenses incurred but not actually paid in the year the deduction is claimed.

The fact that the officers in their respective individual tax returns for 1946 reported the receipt of such amounts does not establish payment by the petitioner. *Vander Poel, Francis & Co.*, 8 T. C. 407; *Martinus & Sons* v. *Commissioner*, 116 F. 2d 732, affirming a Memorandum Opinion of this Court entered February 6, 1940.

The other deductions disallowed by the respondent in determining the petitioner's net loss for 1946 consist of rent of $2,160, bookkeeping services of $405, and promotional expenses of $520, aggregating $3,085.

If the amounts erroneously allowed by the respondent for reasonable salaries to petitioner's two officers are excluded, the allowance in

full of the other expenses above-mentioned would not have the effect of increasing the petitioner's 1946 net loss over the amount allowed by the respondent. Hence, we have deemed it unnecessary to determine the amounts deductible in connection with such other expenditures. The respondent has not requested any increased deficiencies and, as we may not reduce the amount which the respondent has allowed as the petitioner's net loss for 1946, we have found as an ultimate fact that the petitioner's net loss for 1946 was not in excess of the sum of $3,940.35, as determined by the respondent.

As an alternative issue, the petitioner contends that it is entitled to a dividends-paid credit for any portion of officers' salaries, or promotional or travel expenses determined not to constitute proper deductions in the respective taxable years. Of the deductions claimed by the petitioner in the taxable years involved, we have held all of them to be deductible as ordinary and necessary business expenses of petitioner, except certain amounts paid to Helen Tischer as salary which we have found to be excessive.

Section 27 (h) of the Internal Revenue Code specifically limits the dividends-paid credit to such as are distributed pro rata among stockholders of the same class. Each of petitioner's two stockholders owned 50 per cent of the outstanding stock. Since we have allowed the full amounts of salary paid by petitioner to one of its officers, to permit a dividends-paid credit for the salary disallowed the other officer would be in violation of the statute requiring the distributions to be pro rata. *W. T. Wilson*, 10 T. C. 251, affirmed on other issues, 170 F. 2d 423, certiorari denied 336 U. S. 909; *St. Clair Estate Co.*, 9 T. C. 392, appeal dismissed November 3, 1948. Petitioner's contention is, therefore, without merit.

Also, in the alternative, petitioner contends that in the event it is held to be a personal holding company in computing its subchapter A net income it is entitled to deduct income taxes and declared value excess-profits taxes paid or accrued in the respective years, as provided in section 505 (a) (1).

Petitioner reports its income on the cash basis and this Court has consistently held that such a taxpayer may deduct only the Federal taxes actually paid during the taxable year.

The Courts of Appeals for the District of Columbia and the Second Circuit have disagreed with our interpretation of section 505 (a) (1) of the Code as applied to personal holding companies. *Clarion Oil Co.*, 1 T. C. 751, revd. 148 F. 2d 671, certiorari denied 325 U. S. 881; *Joan Carol Corporation*, 13 T. C. 83, revd. 180 F. 2d 751. In *Birmingham v. Loetscher Co.*, 188 F. 2d 78, the Court of Appeals for the Eighth Circuit, in affirming an appeal from the District Court of Iowa, approved the rule as announced by the Court of Appeals for

the District of Columbia in the *Clarion Oil Co.* case, *supra*, and the case of *Aramo-Stiftung* v. *Commissioner*, 172 F. 2d 896. We have concluded to follow these decisions.

We, therefore, hold that petitioner in computing its subchapter A net income is entitled to deduct the income and declared value excess-profits taxes paid or accrued in the respective taxable years.

Reviewed by the Court.

*Decision will be entered under Rule 50.*