**In re ACME MUSIC COMPANY, INC., Debtor.**

**ACME MUSIC COMPANY, INC., Plaintiff,**

**v.**

**INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 93–23514–MBM.
Adversary No. 94–2296.**

United States Bankruptcy Court,
W.D. Pennsylvania.

June 7, 1996.

---

927

William C. Kaczynski, Pittsburgh, PA, and James A. Prostko, Phillips & Galanter, PC, Pittsburgh, PA, for ACME Music Co., Inc.

R. Scott Clarke, Michelle O. Gutzmer, Trial Attorney, Tax Division, U.S. Dept. of Justice, Washington, DC, for I.R.S.

## MEMORANDUM OPINION

M. BRUCE McCULLOUGH, Bankruptcy Judge.

### STATEMENT OF FACTS

ACME Music Company (ACME), debtor and plaintiff in this adversary proceeding, initiated this bankruptcy case by filing a petition under Chapter 11 on October 5, 1993. The Internal Revenue Service (IRS), defendant in this proceeding, filed a proof of claim in this case for $2,893,729.35, asserting liability on ACME's part for outstanding taxes pertaining to the period from 1988–1992.[1] Because ACME objects to both the legality and amount of this claim for taxes, it has requested that this Court, pursuant to 11 U.S.C. § 505(a)(1), determine both the amount and/or legality of such tax assessment. Subsequent to a status conference between the parties on November 21, 1995, this Court framed and proposed to the parties certain issues pertinent to a resolution of a portion or all of this proceeding. At the same time, this Court directed either or both

---

1. Although the IRS has asserted its claim on the basis of its audit of ACME for 1988 and 1989, its claim in this case was amended to also include amounts for the tax years of 1990–1992.

of the parties to submit motions for summary judgment regarding any or all of such issues. ACME submitted a motion for summary judgment which, while not exactly corresponding to this Court's breakdown of the issues, essentially requests full summary judgment. The IRS, in both its response and at a hearing on April 15, 1996, opposes such motion of ACME.

This Court may grant ACME's motion for summary judgment, or partial summary judgment with respect to particular issues, only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party [ie., ACME] is entitled to a judgment as a matter of law." Fed.R.Civ.P. Rule 56(c),[2] 28 U.S.C.A. (West 1992). Stated another way, "[w]here the record, taken as a whole, could not 'lead a rational trier of fact to find for the nonmoving party [ie., the IRS], summary judgment is proper.'" *Hankins v. Temple University*, 829 F.2d 437, 440 (3rd Cir.1987). While summary judgment is inappropriate in those instances where a genuine issue remains as to a *material* fact, this Court may proceed to compile the record in this case, for purposes of this motion only, by resolving all genuine issues of fact, either material or not, in the favor of the IRS.

The following facts are not disputed:[3]

1. ACME was in the business of placing coin-operated machines that it owns on the premises of others.[4]

2. With only two exceptions, ACME split the gross receipts generated by the machines with the owners of the premises on which the machines were placed pursuant to written agreements between ACME and such owners.

3. ACME reported as income on its federal income tax returns for all years in question only its portion of the profits called for pursuant to such arrangements.

4. ACME entered the premises of location owners during business hours and removed money from the machines on a periodic basis, counting it and distributing at that time a portion to the location owners in accordance with their agreement.[5]

5. The location owners maintained sole possession of the keys to their establishments.

6. With the exception of license fees, the cost of which it shared equally with the location owners, ACME assumed total responsibility for maintenance of its machines and other expenses associated with its placement arrangements.

7. ACME selected, on its own, the particular machines to be placed upon the premises.

8. Differences, often sharp, exist among the beliefs of numerous establishment owners regarding the precise legal, tax, and business classification of their arrangements with ACME. These differences are evidenced by the disparity in depositions among the various establishment owners.

9. ACME, in exchange for the initiation of certain of its arrangements, provided certain location owners with, what ACME termed, an advance on their future earnings from the machines. ACME contends that such advances were to be repaid through future setoffs against the location owners' portion of the funds collected from the machines.

---

**2.** Rule 56 of the Federal Rules of Civil Procedure is made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Fed.R.Bankr.P. Rule 7056, 11 U.S.C.A. (West 1984).

**3.** These facts, as well as the determination by this Court that they are not in dispute, have been adduced from either the record of the April 15, 1996 hearing or the various pleadings filed with this Court.

**4.** ACME ceased operation of its business shortly after filing its Chapter 11 petition, and is presently in the process of conducting a liquidation of its

remaining assets through the Chapter 11 process.

**5.** Both parties agree that two particular arrangements were excepted from this procedure. With respect to these two exceptions, ACME, by agreement with the establishment owner, collected the money from machines by itself and then remitted a check to such owner. There apparently is not a tax issue with respect to these two particular arrangements, presumably because the establishments qualify ACME for an exemption from the reporting requirements which are the subject of the tax dispute.

The IRS, while not disputing this contention, maintains that such payments were made in order to allow ACME to place its machines on the particular premises. ACME has not disputed this contention, rather only disputing the IRS' inference therefrom.

Only one fact clearly seems to be disputed, and that is whether ACME retained sole possession of keys to the machines, the IRS maintaining that it did while ACME maintains otherwise.

As a result of an audit of ACME's operations for the years 1988 and 1989, the IRS determined, for the first time, that ACME's arrangements with the location owners constituted leases of space by ACME; ie., ACME was the lessee and the location owners were the lessors. On the basis of this determination, the IRS then concluded that ACME had made rent payments to the location owners. Because payments to each of the location owners were for more than $600 in each of these years, the IRS contends that ACME was required for each year, pursuant to § 6041(a), (d) of the Internal Revenue Code (IRC),[6] to file an information return on Form 1099 and issue a corresponding statement to each of the location owners with respect to such remuneration. Because such returns and statements were not issued, the IRS assessed penalties pursuant to IRC §§ 6721(e)[7] and 6722(c).[8] The IRS' conclusion that ACME was subject to IRC § 6041(a) also carried with it an obligation on ACME's part to deduct backup withholding taxes from payments to the location owners pursuant to IRC § 3406(a).[9] ACME has taken the position, as it did in its prior income tax returns, that it was the lessor of the machines and that the location owners were lessees. Such position was upheld by the IRS in its audit of ACME for the years 1986 and 1987. Therefore, ACME maintains that it has not made payments to the location owners and is, therefore, not subject to the IRS' reporting and withholding requirements.

The IRS asserts, alternatively, that if ACME cannot properly be viewed as the lessee in its arrangements with the location owners and, therefore, payments within the meaning of IRC § 6041(a) were not made, such arrangements nevertheless constituted joint ventures between ACME and each location owner. Because IRC § 761(a) mandates that joint ventures are viewed as partnerships for the purpose of federal income

---

6. IRC § 6041(a) provides, in pertinent part:

All persons engaged in a trade or business and making payment in the course of such trade or business to another person, of rent ... of $600 or more in any taxable year, ... shall render a true and accurate return to the Secretary, under such regulations ... as may be prescribed by the Secretary, setting forth the amount of such gains, profits, and income, and the name and address of the recipient of such payment.

IRC § 6041(a) (West 1989). IRC § 6041(d) provides, in pertinent part:

Every person required to make a return under subsection (a) shall furnish to each person with respect to whom such a return is required a written statement showing—

(1) the name and address of the person required to make such return, and

(2) the aggregate amount of payments to the person required to be shown on the return.

IRC § 6041(d) (West 1989).

7. IRC § 6721(e) imposes a penalty for "intentional disregard" of the requirement to timely file, inter alia, the information return called for in IRC § 6041(a). IRC § 6721(e) (West Supp. 1995). *See also* IRC §§ 6721(a)(2)(A) and 6724(d)(1)(A)(I).

8. IRC § 6722(c) imposes a penalty for "intentional disregard" of the requirement to timely furnish, inter alia, a payee statement called for in IRC § 6041(d). IRC § 6722(c) (West Supp. 1995). *See also* IRC §§ 6722(b)(1) and 6724(d)(2)(C).

9. IRC § 3406(a) provides, in pertinent part:

In the case of any ... payment ["of a kind, and to a payee, required to be shown on a return required under IRC § 6041"], if—

(A) the payee fails to furnish his TIN to the payor in the manner required, [or]

(B) the Secretary notifies the payor that the TIN furnished by the payee is incorrect, ... then the payor shall deduct and withhold from such payment a tax equal to 31 percent [20 percent before December 31, 1992] of such payment.

IRC § 3406(a) (West Supp.1995). *See also* IRC § 3406(b)(1)(B), (b)(3)(A). However, and although not asserted in the alternative by ACME in its pleadings, IRC §§ 3406(h)(10) and 3402(d) apparently operate to extinguish a payor's liability in the event, and to the extent, that a payee makes payment to the IRS of such amount required to be withheld under IRC § 3406(a). IRC §§ 3406(h)(10), 3402(d) (West Supp.1995).

taxation,[10] the IRS asserts an alternative obligation on the part of ACME to file partnership returns and furnish statements to the partners for the years in question pursuant to IRC § 6031(a), (b).[11] In light of the fact that this obligation was not met by ACME for those years, the IRS asserts alternatively that ACME is subject to penalties pursuant to IRC §§ 6698(a)[12] and 6722(c).[13] The legality of this alternate contention is also disputed by ACME.[14]

## DISCUSSION

**I. *Whether this Court has jurisdiction to determine ACME's tax liability given that such determination may impact non-debtor third parties?***

 As an initial matter, and in response to an assertion by the IRS in its initial answer to ACME's complaint, this Court wishes to make clear that it has jurisdiction to determine the tax liability of a debtor in the instance where such determination may impact non-debtor third parties. The IRS asserts that, because this Court "lacks jurisdiction to litigate the tax liability

of[,] or tax matters relating to[,] non-debtor third parties," it also may not entertain ACME's § 505(a) motion. This assertion is incorrect notwithstanding that a determination of ACME's tax liability in this case may ultimately impact tax matters pertaining to the establishment owners as well as principals and/or employees of ACME, all of whom are non-debtor third parties in this case. The settled law, at least in the Third Circuit, is that a bankruptcy court, pursuant to 28 U.S.C. §§ 1334 and 157, (a) may determine the tax liability of a debtor regardless of the impact (and binding effect) which such determination may *also* have on non-debtors, but (b) may not determine the tax liability of non-debtors in those instances where such determination would not, in any way, directly and substantially affect the debtor's bankruptcy case. *Quattrone Accountants, Inc. v. I.R.S.*, 895 F.2d 921, 924–26 (3rd Cir.1990);[15] *see also Matter of Campbell Enterprises, Inc.*, 66 B.R. 200, 202–04 (Bankr.D.N.J.1986); *In re Major Dynamics, Inc.*, 14 B.R. 969, 972 (Bankr.S.D.Cal.1981). Applying this proposition to this case, this Court clearly has juris-

10. IRC § 761(a) (West 1988).

11. IRC § 6031(a) provides, in pertinent part, that "[e]very partnership (as defined in section 761(a)) shall make a return for each taxable year, stating specifically...." IRC § 6031(a) (West 1989). IRC § 6031(b) provides, in pertinent part, that "[e]ach partnership required to file a return ... shall ... furnish to each ... partner ... a copy of such information...." IRC § 6031(b) (West 1989).

12. IRC § 6698(a) provides, in pertinent part:
... [I]f any partnership ... fails to file [its partnership information] return at the time prescribed ... such partnership shall be liable for a penalty determined under subsection (b) for each month (or fraction thereof) during which such failure continues (but not to exceed 5 months), unless it is shown that such failure is due to reasonable cause.
IRC § 6698(a) (West 1989).

13. IRC § 6722(c) is implicated here, as well as with respect to penalties for failure to comply with IRC § 6041(d) (*see* footnote 8 of this opinion), because a "payee statement," the failure to file which may result in penalties under IRC § 6722, includes "any statement required to be furnished under ... [IRC] section 6031(b) ... (relating to statements furnished by certain pass-thru entities [ie., partnerships])." IRC § 6724(d)(2)(A) (West Supp.1995).

14. The IRS has also filed a proof of claim for an amount that it alleges has not yet been paid with respect to ACME's 1989 Form 1120 (ie., corporate income tax). ACME disputes the amount remaining due with respect to this return, alleging that the IRS has not properly credited payments which it has made regarding this return. ACME also asserts that it should receive credits in the event that it is successful in this proceeding against the IRS. However, ACME has not sought relief regarding this matter in its motion for summary judgment, thus relegating resolution of this matter to future deliberations. Moreover, this Court also believes that the facts regarding this matter must be further clarified prior to its resolution by this Court. Therefore, summary judgment regarding this particular matter would not be appropriate in any event.

15. The Third Circuit, after "agree[ing] with the IRS' assertion that Section 505 refers only to debtor tax liability ...[,] conclude[d] that Section 505 was intended to *clarify* the bankruptcy court's jurisdiction over tax claims, not *limit* its jurisdiction only to debtors." *Quattrone*, 895 F.2d at 924 (emphasis theirs). "[T]he issue of the bankruptcy court's jurisdiction ... is to be determined *solely* by 28 U.S.C. § 1334 [in conjunction with 28 U.S.C. § 157]." *Id.* at 926 (footnote 3, as well as the accompanying text) (emphasis ours).

diction to determine ACME's tax liability pursuant to 11 U.S.C. § 505(a) because such a determination will directly and substantially affect ACME's bankruptcy case notwithstanding its possible impact upon non-debtor third parties. Moreover, because this Court is called upon to determine the tax liability of the debtor, this proceeding is also a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A), (b)(2)(B), and (b)(2)(O).

The IRS has not argued, in the alternative, that this court should abstain from determining ACME's tax liability pursuant to 28 U.S.C. § 1334(c)(1). However, a motion to that effect would also fail because another proceeding regarding ACME's tax liability is not presently in process, and lifting the automatic stay and commencing such an action in another court would be inefficient.

## II. Whether ACME's arrangements with the location owners rendered it subject to the information reporting requirements of IRC § 6041(a), (d) and the corresponding backup withholding tax set forth in IRC § 3406(a)?

The IRS relies on its Revenue Ruling 57–7, 1957–1 C.B. 435, for its assertion that ACME has made payments subjecting it to information reporting and backup withholding tax requirements pursuant to IRC §§ 6041(a), (d) and 3406(a) respectively. However, the IRS' position in this revenue ruling has not been upheld in either *Manchester Music Co., Inc. v. U.S.*, 733 F.Supp. 473 (D.N.H.1990), or *Williamson Music Co., Inc. v. U.S.*, 90–2 U.S.T.C. 85148, 1990 WL 107528 (D.Minn.1990), which appear to be the

only two cases which have dealt with this particular issue. The IRS nevertheless maintains that Revenue Ruling 57–7 should apply in this case because the facts in *Manchester* and *Williamson* differ from ACME's situation in significant respects. This Court cannot agree with this contention, however, for the reasons set forth below.[16]

In contrast to the assertion of the IRS, this Court finds the pertinent facts in *Manchester* and *Williamson* to be identical to those in this case in practically all significant respects. In both *Manchester* and *Williamson*, as in this case, the taxpayers were engaged in the coin-operated machine business. In all three cases, the compensation arrangement between the taxpayers and the owners of the premises upon which their machines were placed called for a split, or sharing, of the gross receipts generated therefrom. Also identical with respect to the three taxpayers was the division of proceeds. In particular, although all three taxpayers maintained exclusive access to the machines,[17] in each case they did not have unilateral access to the establishments upon which the machines were placed, thus necessitating a division of proceeds in all three cases that could only take place at a mutually accorded time with representatives of both the taxpayers and the establishment owners present. The only significant difference between *Manchester* and *Williamson*, on the one hand, and this case, is the fact that ACME assumed total responsibility for expenses associated with its placement arrangements excepting for license fees, rather than sharing such costs with the establishment owners.[18]

**16.** This Court recognizes, as did the court in *Manchester*, that "courts are to give weight to IRS revenue rulings but may disregard them if they conflict with the statute they purport to interpret or its legislative history, or if they are otherwise unreasonable." *Geisinger Health Plan v. C.I.R.*, 985 F.2d 1210, 1216 (3rd Cir.1993). Because *Manchester* is on point with this case regarding ACME's liability under IRC § 6041(a), this Court adopts that court's conclusion that Revenue Ruling 57–7 is "not only unreasonable but fatally flawed." *Manchester*, 733 F.Supp. at 483.

**17.** Because there is a dispute regarding whether ACME or the establishment owners possessed the keys to the machines, this factual issue will be

decided in the IRS's favor for purposes of this motion only. However, as is pointed out in the text of this opinion at this footnote, the taxpayers in both *Manchester* and *Williamson* also maintained sole possession of the keys to their machines. *Manchester*, 733 F.Supp. at 478; *Williamson*, 90–2 U.S.T.C. at 85148. Therefore, this particular factual dispute, although decided in the manner proposed by the IRS, merely further aligns ACME's factual situation with that of the taxpayers in both *Manchester* and *Williamson*.

**18.** It is not entirely clear to this Court whether ACME's situation in this regard is actually different than that of the taxpayers in *Manchester* and *Williamson*. For a discussion on this point, see this opinion at footnote 22.

Given this set of facts, the court in *Manchester* concluded that the machine owner in that case had not made a payment within the meaning of IRC § 6041(a) and, therefore, was not subject to reporting and withholding requirements. *Manchester*, 733 F.Supp. at 482. In arriving at this conclusion, the court in *Manchester* undertook a two-part analysis:

1. "[W]hether the machine proceeds originally belonged to the ... [machine owner] in their entirety, whether they constituted income to ... [it], a question which, were we to answer in the negative, would also bring our inquiry to a close [ie., the machine owner would not have made a payment]." *Id.* at 479. The court in *Manchester* determined that, because the machine owner in that case could only have initially realized income to the extent of half of the machine proceeds, "the 'transfer' of the other half to the owners of the establishments ... [could not] constitute a payment for purposes of § 6041(a)." *Id.* at 482.

2. Whether the division of profits constituted a payment within the legal definition of that term, pursuant to not only IRC § 6041(a) but also § 1.6041–1(f) of the IRS' own regulations. *Id.* Treas.Reg. § 1.6041–1(f) provides, in pertinent part, that "for purposes of a return of information, an amount is deemed to have been paid when it is credited or set apart to a person ... and its receipt is brought within his own control and disposition." Treas.Reg. § 1.6041–1(f) (as amended in 1992). As well, "Black's Law Dictionary defines 'payment' as, among other things, 'a delivery of money or its equivalent ... by one person from whom it is due to another person to whom it is due.'" *Manchester*, 733 F.Supp. at 482. Thus, "a payment occurs with the transfer of possession, dominion, or control over money or its equivalent from a person who up to that point had been exercising such prerogatives over the same to another who is due the funds." *Id.* Because "at no point in time did Manchester Music ever exercise 'possession, dominion, or control' over the funds which ultimately wounded up in proprietors' hands, ... no payment occurred for purposes of § 6041(a)." *Id.*

■■■ As part of its rationale for its determination that only half of the proceeds taken from the machines constituted income to the machine owner, and therefore that a payment had not been made pursuant to IRC § 6041(a), the *Manchester* court also concluded that the machine owner and the location owners were engaged in joint ventures. *Id.* at 481, 484. However, this conclusion, while perhaps helpful to the *Manchester* court in drawing its ultimate conclusions, was not necessary to its decision. Nevertheless, it is clear to this Court in this case that the IRS, as well as ACME in its response, both have focused on the classification of ACME in the belief that consequences pertaining to IRC § 6041(a) necessarily follow from such classification. Such is absolutely not the case. Instead, this Court concludes, as a matter of law, that whether a payment is made within the meaning and intendment of IRC § 6041(a) is, in no way, dependent upon whether a taxpayer may be classified as a lessor, lessee, or joint venturer.[19] Therefore, even assuming arguendo that a taxpayer is a lessee with a concomitant rent obligation, satisfaction of such obligation other than by "payment" will not trigger IRC § 6041(a). Congress, if it intended to bring substitutes for payments within the reach of IRC § 6041(a), would most assuredly have done so in a more clear and explicit manner.

**19.** As support for this position, see the discussion in *Manchester* of *Stevens Brothers and Miller–Hutchinson, Co. v. Commissioner*, 24 T.C. 953, 1955 WL 638 (1955), wherein it was pointed out that a "third party corporation 'was entitled to one-half of the income from the job, *regardless of what the relationship between it and the petitioner may be called*, ... [thus rendering] that part of the income ... not taxable to the petitioner.'" *Manchester*, 733 F.Supp. at 480 (emphasis ours). The *Manchester* court cited *Stevens Brothers* in that portion of its opinion wherein it determined that a payment within the meaning of IRC § 6041(a) cannot occur unless the purported payor first realizes income for tax purposes with respect to the amount of the purported payment. This Court can see no reason why, if the status of a relationship is irrelevant to whether income is realized by a taxpayer, such status would have added importance regarding whether a payment had been made by that taxpayer, especially given the particular language of IRC § 6041(a).

Moreover, the principle of substance over form, although it is a basic tenet for the application of the Internal Revenue Code, cannot operate to reclassify as payments, *per se,* any and all conceivable methods for satisfaction of an obligation; instead, whether a particular satisfaction of an obligation constitutes a payment can only be determined on a case-by-case basis.

■ Turning to the facts of this case, it is clear to this Court that (a) pursuant to the arrangements, ACME, rather than possessing a right to all of the receipts collected from the machines, had a right to only a percentage thereof and, consequently, only realized income to the extent of such percentage, and (b) ACME, at no point, exercised any possession, dominion, or control over the portion of the machine receipts that were ultimately possessed by the location owners. Therefore, this Court can only conclude that ACME did not make payments within the meaning of IRC § 6041(a) when it divided proceeds from its machines with the location owners. This Court must also conclude that, because the division of proceeds did not constitute payments by ACME within the meaning of IRC § 6041(a), ACME was not subject to either the withholding requirements of IRC § 3406(a) or the penalty provisions of IRC §§ 6721(e) and 6722(c) with respect thereto.

■ This Court also determines that it may render this decision in response to a motion for summary judgment as the pertinent facts in this case are effectively undisputed, and but one conclusion may properly be inferred from such facts. While this Court realizes that the IRS disputes the classification of ACME as either a lessor, lessee, or joint venturer, the resolution of such factual dispute is unnecessary to a determination whether IRC § 6041(a) is triggered. Additionally, and as might be expected, practically all of the evidence offered by the IRS in opposition to ACME's summary judgment motion regarding IRC § 6041(a) pertains only to the classification issue. Therefore, it is unresponsive to whether ACME made payments. In particular, this Court wishes to address the following apparent differences between *Manchester* and *Wil-liamson,* on the one hand, and this case, such differences noted by the IRS as significant enough to render such cases inapposite to this one:

1. Up-front "payments" made by ACME to certain of the premises owners—The IRS maintains that these tend to support its assertion that ACME was leasing space from such owners. This Court, while not necessarily in agreement with this conclusion, agrees that such evidence may, at least, tend to support this assertion. Nevertheless, such evidence is not, in any way, probative of whether subsequent divisions of machine proceeds constituted payments to the location owners. The most that can be said is that, because ACME exercised control over the funds used to make such "payments" prior to their transfer to the location owners, such "payments" themselves may have been subject to reporting and withholding requirements to the extent that they actually constituted advances on future divisions of receipts. This Court determines that further clarification of the amounts, as well as the nature, of such "payments" is necessary for the limited purpose of determining whether such payments themselves are subject to the IRS' claims under IRC §§ 6041(a), (d), 3406(a), 6721(e), and 6722(c).

2. Several affidavits of location owners regarding their beliefs concerning classification of the arrangements—The IRS asserts that these beliefs support its position that ACME was actually a lessee. Once again, while possibly probative of that fact, such evidence is not, in any way, probative of whether ACME had made payments to the location owners.

3. The difference between *Manchester* and *Williamson,* on the one hand, and this case regarding the lack of sharing of expenses other than license fees—This point actually seems to have a minimal tendency, at best, to support defendant's assertion that ACME is a lessee as opposed to a lessor. Rather, this fact is much more significant in determining whether ACME is a joint venturer with regard to these arrangements. Howev-

er, this difference is not probative at all of whether ACME made payments to the location owners.

4. The fact that ACME bargained for the right to select, on its own, the particular machines to be placed upon the premises for each arrangement—While perhaps probative of whether ACME was a lessee, this is also simply not probative of whether ACME made payments within the meaning of IRC § 6041(a).

Therefore, on the basis of the above analysis, ACME's motion for summary judgment requesting dismissal of the IRS' claims under IRC §§ 3406(a), 6041(a), (d), 6721(e), and 6722(c) is **GRANTED** except for amounts pertaining to the aforementioned "up-front payments." Because ACME's tax liability with respect to these "payments" remains an open issue, its motion for summary judgment with respect to such amounts is **DENIED WITHOUT PREJUDICE.**

### III. Whether ACME's arrangements with the location owners constituted joint ventures, thus subjecting all parties to partnership taxation reporting requirements?

■ The IRS claims alternatively that, if ACME did not make payments under IRC § 6041(a), it must then be a joint venturer with respect to the arrangements. The IRS bases this alternate contention largely upon language in *Manchester* and *Williamson* to the effect that, although the taxpayers therein were not subject to IRC § 6041(a), they were nevertheless joint venturers. *Manchester*, 733 F.Supp. at 481–82, 484; *Williamson*, 90–2 U.S.T.C. at 85149. The courts in *Manchester* and *Williamson*, however, passed on the ramifications of their conclusion that the taxpayers therein were joint venturers. Because the IRS has properly raised its alternate claim, and because it necessarily impacts the tax liability of the debtor in this case, this Court will address the ramifications of such a conclusion. A finding by this Court that ACME was a joint venturer necessarily results in subjecting ACME, as well as the establishment owners, to partnership tax reporting requirements. IRC §§ 761(a), 7701(a)(2) ("the term 'part-

nership' includes a ... joint venture"); IRC § 6031(a) ("Every partnership (as defined in section 761(a)) shall make a return for each taxable year ..."); IRC § 6031(b) ("Each partnership required to file a return ... shall ... furnish to each ... partner ... a copy of such information ..."). Because neither ACME nor the location owners filed partnership returns or furnished statements to the partners for the years in question, such a finding would also implicate the penalty provisions of IRC §§ 6698(a) and 6722(c).

■ Whether ACME and the location owners entered into joint ventures for federal income tax purposes depends upon "whether the parties intended to, and did in fact, join together for the present conduct of an undertaking or enterprise." *Luna v. Commissioner*, 42 T.C. 1067, 1077, 1964 WL 1259 (1964). Indicative of such an undertaking or enterprise are a number of factors, none of which are conclusive:

The agreement of the parties and their conduct in executing its terms; the contributions, if any, which each party has made to the venture; the parties' control over income and capital and the right of each to make withdrawals; whether each party was a principal and coproprietor, sharing a mutual proprietary interest in the net profits and having an obligation to share losses, or whether one party was the agent or employee of the other, receiving for his services contingent compensation in the form of a percentage of income; whether business was conducted in the joint names of the parties; whether the parties filed Federal partnership returns or otherwise represented to respondent or to persons with whom they dealt that they were joint venturers; whether separate books of account were maintained for the venture; and whether the parties exercised mutual control over and assumed mutual responsibilities for the enterprise.

*Id.* at 1077–78. However, "[o]f critical significance is the absence of any agreement to share profits and losses." *Kazdin v. Commissioner*, TCM 1969–75, 28 TCM 432, 1969 WL 1095 (1969); *accord Tompkins v. Commissioner*, 97 F.2d 396, 398 (4th Cir.1938) (citing *Dexter & Carpenter v. Houston*, 20

F.2d 647, 651–52 (4th Cir.1927) to the effect that a joint venture is "a 'special combination of two or more persons, where in some specific venture a profit is jointly sought ...'"); *Form Builders, Inc. v. Commissioner,* TCM 1990–75, 58 TCM 1415, 1990 WL 12088 (1990) ("Most notably, we find that their arrangement lacked a joint profit motive, a fundamental aspect of the 'joining together in the present conduct of an enterprise' require[ment]"); *Wm. J. Lemp Brewing Co. v. Commissioner,* 18 T.C. 586, 596, 1952 WL 155 (1952) ("the element of profit sharing is an important factor in determining whether a joint venture exists"); *Sierra Club, Inc. v. Commissioner,* 103 T.C. 307, 344 note 22, 1994 WL 459913 (1994) (citing *Lemp,* 18 T.C. at 587, to the effect that an "important factor is lack of sharing of joint profit"). This proposition is also adhered to in the IRS' own regulations; *see,* in particular, Treas. Reg. § 301.7701–2(a)(2) ("... an objective to carry on business and divide the gains therefrom ... [is] generally common to both corporations and partnerships...."); Treas. Reg. § 301.7701–3(b)(2) Ex. 1, 2 ("an objective to carry on business and divide the gains therefrom ... characterize[s] both partnerships and corporations"). "What is more, the sharing of ... receipts is not equivalent to a sharing of profits [ie., sharing of profits entails a sharing of *both receipts and expenses* ]." *Kazdin,* 28 TCM 432; *Form Builders,* 58 TCM 1415. This Court thus holds, as a matter of law, that for purposes of federal income taxation, while the presence of a sharing of profits (and not merely gross receipts) is not, by itself, conclusive of whether an arrangement constitutes a joint venture, such sharing of profits must nonetheless be present in order for a joint venture to exist; ie., *the sharing of profits is a necessary, but not sufficient, condition for a finding that a joint venture exists.*

Although the parties to this proceeding may dispute the existence or not of many of the above factors in this case, the IRS does not dispute that (a) with the exception of license fees, only gross receipts were the subject of division in the arrangements in question, and (b) costs pertaining to the machines, such as those for their maintenance and repair, were borne fully by ACME. Therefore, this Court must find that ACME did not share profits from its arrangements with the location owners but rather only split the gross receipts therefrom.[20] This particular fact sets this case apart from *Manchester* and *Williamson.* Moreover, given the critical significance of this fact, this Court cannot find that a reasonable person could conclude that ACME had entered into joint ventures with the location owners,[21] either for federal tax purposes[22]

---

**20.** Because the location owners shared neither profits nor losses with ACME, we need not address whether an arrangement(s) would qualify as a joint venture for federal income tax purposes if profits were shared but losses were not. However, case law seems to strongly suggest that a sharing of losses (ie., a sharing of expenses even if such expenses exceed gross receipts) is also a necessary, but not sufficient, condition for a finding that a joint venture exists. *Kazdin,* TCM 1969–75, 28 TCM 432 ("[o]f critical significance is the absence of any agreement to share profits *and losses* "); *University Hill Foundation v. Commissioner,* 51 T.C. 548, 568, 1969 WL 1730 (1969) ("Among the critical elements involved in the determination [of the existence of a joint venture is] a *risk of loss* in the taxpayer").

**21.** The IRS also relies on its recently issued Revenue Ruling 92–49, 1992–1 C.B. 433, which, in addition to reaffirming its earlier position in Revenue Ruling 57–7, incorporates its alternate stance regarding joint ventures and partnership tax reporting requirements. To the extent that the IRS takes the position in this revenue ruling that an arrangement can constitute a joint venture even in the instance when only gross receipts, rather than profits, are shared, this Court must disregard such ruling because such a stance is both unreasonable and in conflict with the meaning of "joint venture" under IRC § 761(a).

**22.** Although the court in *Manchester* found, in its conclusion of law, that the "expenses for the use of the machines were to be equally divided between the ... [machine owner and the location owners]," thus indicating a sharing not only of the gross receipts but also the profits generated by the machines, *Manchester,* 733 F.Supp. at 481, that court also found, in its findings of fact # 59, that "Manchester Music agreed to service and repair the amusement devices." *Id.* at 478. If fact # 59 means that the taxpayer in *Manchester* did not share any costs except for tax and license fees, then ACME's situation is practically identical to that in *Manchester.* However, to the extent that such was the case in *Manchester,* this Court disagrees with that court's finding that the taxpayer therein was engaged in a joint venture. If the taxpayer in that case did not share the

or otherwise.[23] Therefore, disposition of this issue is appropriate upon summary judgment and, accordingly, ACME's motion requesting a dismissal of the IRS' claims under IRC §§ 6698(a) and 6722(c) is also **GRANTED**.

■ Although not necessary to this Court's decision given the finding that ACME had not engaged in joint ventures, this Court nevertheless notes that ACME would have been excused from penalties for its failure to file partnership returns in any event because it can demonstrate, pursuant to IRC § 6698(a), "that such failure … was due to reasonable cause." Such a defense, although not specifically asserted by ACME in the alternative, would also have been available with respect to penalties assessed for ACME's failure to furnish statements to partners.[24] The Third Circuit has held that "reasonable cause means nothing more than the exercise of ordinary business care and prudence." *Sanderling, Inc. v. C.I.R.*, 571 F.2d 174, 179 (3rd Cir.1978) (citing *Hatfried, Inc. v. C.I.R.*, 162 F.2d 628, 635 (3rd Cir. 1947)). Thus, reasonable cause has been found to exist in the instance of (a) a taxpayer's reliance on the IRS' inaction in conjunction with IRS audits, *Dana Corporation v. U.S.*, 764 F.Supp. 482, 488 (N.D.Ohio 1991); *Gilmore v. U.S.*, 443 F.Supp. 91, 99–100 (D.Md.1977), (b) "conflicting rulings or decisions, or ambiguities in the law," *Sanderling*, 571 F.2d at 179; *Gilmore*, 443 F.Supp. at 99; *U.S. v. Northumberland Ins. Co., Ltd.*, 521 F.Supp. 70, 79 (D.N.J.1981), and (c) confusion by the IRS itself regarding both the law and its application, *Sanderling*, 571 F.2d at 177–79.

ACME asserts that the IRS concluded, as a result of its audit of ACME for the years 1986 and 1987, that ACME was treating its operations properly for tax purposes. ACME states that its accountant and the IRS' revenue agent were in agreement at that time as to the tax treatment that should be accorded its operations, and that the IRS had informed ACME that it was in compliance with its reporting requirements under the IRC. This assertion by ACME, as well as the assertion that it relied on the IRS' inaction, is not disputed by the IRS. Reliance by ACME and its accountant on this inaction of the IRS regarding additional filing and/or withholding requirements was clearly both prudent and an exercise by them of ordinary business care. However, such reliance may only constitute reasonable cause, by itself, in the event that ACME did not receive subsequent guidance from the IRS regarding the additional requirements. This guidance was forthcoming but, obviously, only sometime after the audit with respect to 1988 and 1989 had either commenced or was completed. Therefore, on this basis alone, ACME is shielded from penalty under IRC §§ 6698(a) and 6722(c) for at least those two years, as well as any period prior to such notification from the IRS in conjunction with such audit. Moreover, to the extent that such notification only related to requirements pursuant to IRC §§ 3406(a) and 6041(a), such notification would not have informed ACME as to alternate partnership filing requirements.

That the law was ambiguous during the period in question regarding the proper tax reporting requirements for a taxpayer like ACME is also clear. *Manchester* and *Wil-*

---

burden of most of its costs with the location owners (ie., maintenance and repair of the machines), then it is this Court's position that such taxpayer did not actually share profits and losses and should not properly have been viewed as having engaged in a joint venture.

23. Interestingly, ACME notes on page 3 of its pretrial statement that the Pennsylvania Court of Common Pleas for Allegheny County had previously determined in 1992 in a proceeding separate from this bankruptcy case that ACME was a lessor rather than a lessee or joint venturer. This determination, of course, is not binding upon the IRS in its application of the Internal Revenue Code.

24. Such penalties are assessed by the IRS in this case pursuant to IRC § 6722(c). IRC § 6724(a) provides that "[n]o penalty shall be imposed under this part [Part II of Subchapter B of Chapter 68 of the IRC, *or IRC §§ 6721–6724*] with respect to any failure if it is shown that such failure is due to reasonable cause and not to willful neglect." IRC § 6724(a) (West Supp.1995). Therefore, ACME would have been excused from penalties for its failure to furnish statements to partners under IRC § 6031(b) provided that it could demonstrate such reasonable cause.

*liamson* are both inconsistent with the position of the IRS as set forth in its Revenue Ruling 57–7. Furthermore, not until the IRS' issuance of its Revenue Ruling 92–49 would ACME have been assured that it was complying with IRS guidelines had it filed partnership returns rather than Form 1099s, which practice was implicitly called for in *Manchester* and *Williamson*.[25] In light of the obvious ambiguity that existed prior to issuance of Revenue Ruling 92–49, as well as the potential futility of a taxpayer in following one particular course or another, the strategy of ACME and its accountant to continue to report profits in the manner in which they had been reported in previous years was not imprudent or taken without ordinary business care. Moreover, while such ambiguity/confusion might not have remained subsequent to the IRS' issuance of Revenue Ruling 92–49, knowledge of this revenue ruling and its clarification of the IRS' position is not necessarily imputed to a taxpayer. Indeed, reasonable cause may also be shown if a taxpayer can demonstrate that it has "acted in good faith reliance upon the advice of an accountant ... where the taxpayer [itself] does not know whether certain tax returns are required, and therefore must rely on its accountant to resolve a complex question." *Paula Construction Company v. Commissioner*, 58 T.C. 1055, 1061–62, 1972 WL 2482 (1972); *accord Sanderling*, 571 F.2d at 177. Because ACME's own tax advisors still, in good faith, dispute the assessed taxes in this case, at a minimum, ACME's reliance on their actions constitutes reasonable cause on its part. Reasonable cause on this basis would shield ACME from penalty under IRC §§ 6698(a)[26] and 6722(c) for all periods in question.[27]

## CONCLUSION

**IN SUMMARY,** ACME's motion for summary judgment requesting dismissal of the IRS' claims under IRC §§ 3406(a), 6041(a), (d), 6721(e) and 6722(c) is **GRANTED** for all years in question except for amounts that pertain to "up-front payment" made by ACME. With respect to such "up-front payments," ACME's motion is **DENIED WITHOUT PREJUDICE.** ACME's motion for summary judgment requesting dismissal of the IRS' claim under IRC § 6698(a) is also **GRANTED** for all years in question. An appropriate order will be entered.

## ORDER OF COURT

**AND NOW** this **7th day** of **June, 1996,** upon consideration of the motion for summary judgment of ACME Music Company, Inc. requesting dismissal of certain of the IRS' claims against it, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1. This Court, pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1), (b)(2)(A), (b)(2)(B), and (b)(2)(O), **has jurisdiction** to determine ACME's tax liability in accordance with 11 U.S.C. § 505(a) notwithstanding that such determination may possibly impact non-debtor third parties.

25. Rev.Rul. 92–49, 1992–1 C.B. 433 (in particular, the portion entitled *Application* wherein the IRS sets forth an exception to its imposition of failure-to-file penalties).

26. Although also unnecessary given this Court's decision regarding ACME's lack of liability under IRC § 6698(a), and mindful that this Court would lack jurisdiction over the personal tax liability of ACME's principals and employees to the extent that such liability did not impact ACME itself, it would nevertheless seem clear that the IRS could not collect from such principals and/or employees any part of the penalties which it contends it may alternatively assess under IRC § 6698(a). This is because IRC § 6698(c) provides that such penalties "shall be assessed against the partnership." IRC § 6698(c) (West 1989). While ACME would be a partner in any such partnership, and therefore such liability could be assessed against it, its employees and principals are not partners. Since any penalty of the partnership, absent a statutory provision to the contrary, could only be a debt of the corporate partner, the IRS could not seek to satisfy payment of this penalty from employees and principals of such corporation.

27. Because ACME did not file information returns and issue payee statements under IRC § 6041(a), (d) for essentially the same reasons as it failed to file partnership returns and furnish statements to partners, and because those reasons, as set forth above, constitute "reasonable cause," ACME would also have been excused from accompanying IRS penalties assessed under IRC §§ 6721(e) and 6722(c). *See* IRC § 6724(a) and footnote 24 of this opinion.

2. ACME's motion for summary judgment requesting dismissal of the IRS' claims under IRC §§ 3406(a), 6041(a), (d), 6721(e), and 6722(c) is **GRANTED** for all years in question with respect to amounts that represent divisions of proceeds between ACME and the location owners because such divisions of proceeds were not payments within the meaning of IRC § 6041(a). ACME's motion is **DENIED WITHOUT PREJUDICE** regarding amounts that represent "up-front payments" that it made because an issue remains whether such payments were themselves subject to information reporting and withholding requirements.

3. Because ACME did not engage in joint ventures with the location owners—a finding dictated by the failure of such entities to share profits (rather than merely gross receipts)—ACME's motion for summary judgment requesting dismissal of the IRS' claims under IRC §§ 6698(a) and 6722(c) is **GRANTED** for all years in question. Moreover, ACME's motion is also **GRANTED** with respect to these claims on the alternative basis that ACME had reasonable cause for not complying with such information reporting requirements had they in fact been applicable to ACME's operations.